Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
Ruhandy Glezakos, SBN 307473
rglezakos@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: 310-474-9111; Fax: 310-474-8585

Janet R. Varnell*, FBN 0071072
Brian W. Warwick*, FBN 0605573
Matthew T. Peterson*, FBN 1020720
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, FL 33602
Tel: (352) 753-8600; Fax: (352) 504-3301
jvarnell@varnellandwarwick.com
bwarwick@varnellandwarwick.com
mpeterseon@varnellandwarwick.com

*Pro Hac Vice Application Forthcoming

Counsel for Plaintiff Jerry Davidson, individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DAVIDSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED CAR SALES COMPANY, LLC D/B/A UNITED AUTO CREDIT CORPORATION,<br><br>Defendant. | Case No. 8:20-cv-00636<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

# CLASS ACTION COMPLAINT

Plaintiff, JERRY DAVIDSON, individually and on behalf of all others similarly situated, sues Defendant, UNITED CAR SALES COMPANY, LLC D/B/A UNITED AUTO CREDIT CORPORATION, a California Corporation, and alleges:

## INTRODUCTION

1. This Complaint seeks to enforce the Military Lending Act, 10 U.S.C. § 987, ("MLA") enacted to protect members of the United States Military from an epidemic of predatory lending that would endanger our Nation's military readiness and impact service member retention. The MLA was specifically enacted to regulate the commercial lending practices and products offered to covered borrowers.

2. UNITED AUTO CREDIT CORPORATION ("Defendant" or "United") is a sub-prime lending corporation who, among other things, finances loans for automotive dealers throughout the United States.

3. Plaintiff JERRY DAVIDSON ("Plaintiff") was on active duty status with the United States Army, working as an Aviation Operations Supervisor. He was and still is married to Rebecca Ollison, who is an active duty member of the United States Army currently stationed at Fort Belvoir, Virginia. In October of 2018, Plaintiff obtained financing from United that qualified for MLA protections under a standard form Retail Installment Contract ("Installment Contract").

4. United is subject to the MLA's mandatory disclosures and limitations because it extends consumer credit to covered borrowers. It has a duty to make reasonable inquiry when lending money as to whether the borrower is a covered member under the MLA. As part of the implementing regulations, a database was created to assist lenders with the identification of the borrowers that Congress sought to protect. United does not make reasonable inquiry before offering financing to members of the United States Military, such as Plaintiff.

5. United's standard form Installment Contract with Plaintiff fails to comply with the MLA because it requires Plaintiff to submit to arbitration, waive certain

damages, does not provide accurate MLA cost of credit financing disclosures, and misstates the Military Annual Percentage Rate as well as the interest rate, each of which are violations of the MLA.

6. The MLA's "Penalties and Remedies" provides that a violation of the MLA renders the contract void from inception.

7. Upon information and belief, United's unlawful and deceptive conduct uses a uniform process on all of the loans it provides throughout the United States. Because it employs a standard form Installment Contract as part of its unlawful MLA scheme and uses uniform and standard mathematics in determining the Military Annual Percentage Rate ("MAPR") on the contracts, this case is well suited for class action treatment for violations of the MLA.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter pursuant to 10 U.S.C.A. § 987, 28 U.S.C. §1331 and 1337.

9. Venue is proper in this district pursuant to 10 U.S.C.A. § 987 and 28 U.S. §1391.

## PARTIES

10. At all times material hereto, Plaintiff Davidson was sui juris and a resident of Virginia.

11. At all times material hereto, United, was and is a California corporation, headquartered in Newport Beach, California. At all times material hereto, United finances motor vehicles in throughout the United States.

12. At all times relevant hereto, Plaintiff was on active duty status with the United States Army and his wife who is co-obligor on the loan was and is on active duty military status.

## FACTUAL ALLEGATIONS

### The Military Lending Act, 10 U.S.C. §987

13. The United States Congress passed the Military Lending Act of 2006

(hereinafter "MLA") and was implemented as part of the John Warner National Defense Authorization Act for Fiscal Year 2007, Section 670, to protect military servicemembers from unfair or abusive loan or credit sale transactions, such as high interest, short-term, or installment loans to inexperienced military borrowers, who in years prior to enactment had fell victim to predatory lending.

14. The MLA directs the Secretary of Defense to prescribe regulations to carry out the MLA, specifically to include definitions for the terms "creditor," "consumer credit" and "finance charges" for purposes of calculating the Military Annual Percentage Rate ("MAPR").

15. The MLA prohibits a "creditor" from extending certain kinds of "consumer credit" to covered borrowers with a military annual percentage rate of interest ("MAPR") and directs the Secretary of Defense to prescribe regulations to carry out the purpose of the MLA, specifically to include definitions for terms "creditor" and "consumer credit."

16. Under the MLA, creditors must provide specific disclosures relating to the cost of credit, such as a statement of Military Annual Percentage Rate (MAPR) and a clear description of payment obligations.

17. The MLA also prohibits creditors from requiring military borrowers to submit to arbitration and waive legal rights, such as an award of punitive damages, under state and federal law.

18. Vehicle loans to military members are subject to the MLA under "consumer credit" if the creditor finances an amount greater than the cost of the vehicle and greater than costs related to the vehicle.

19. The Retail Installment Contract and Security Agreement presented to Plaintiff included amounts in addition to the cost of the vehicle and the costs related to the vehicle.

20. The MLA places a duty on creditors to determine whether a potential borrower is a "covered borrower" and provides an easy to implement safe harbor to

4
CLASS ACTION COMPLAINT

protect a creditor from liability if they reasonably implement the procedure. Specifically, the MLA permits creditors to use two methods when ascertaining whether a consumer is a covered borrower for purposes of the MLA's protections: (1) The MLA Database maintained by the Department of Defense, and (2) consumer reports from a nationwide credit reporting agency. Despite the MLA's grant of a safe harbor if either of these methods are used, upon information and belief, United systematically fails to implement policies and procedures to ascertain whether a consumer is a military borrower subject to the MLA protections just as it did in the case of the Plaintiff. Additionally, United fails to make even the most basic inquiry as to whether its borrowers are subject to the MLA as part of its application process.

**United**

21. United is a lending creditor for vehicles purchased throughout the United States.

22. United has financed tens of thousands of automobile loans totaling hundreds of thousands of dollars.

23. It currently has over 4,500 auto dealer customers and has provided auto loans totaling over $350 million to over 53,000 borrowers.

24. Upon information and belief, United employs standard form Retail Purchase Agreements and Retail Installment Contracts for loans at all of their locations across the United States, with no variations.

25. Despite providing financing for thousands of automotive dealer locations across the United States, upon information and belief, United has systematically failed to develop policies and procedures to ascertain if a consumer is a military service member subject to the MLA and to conform those loans to the dictates of the MLA.

26. Upon information and belief, United has uniformly and systematically failed to implement policies and procedures to ensure compliance with the MLA's mandatory disclosures and limitations as part of their standard form Retail Installment Contracts that United uses uniformly.

**Plaintiff's Loan**

27. Plaintiff serves in the United States Army.

28. On October 13, 2018, Plaintiff went to "Select Cars of Thomburg" in Fredericksburg, Virginia near where Plaintiff is stationed. Plaintiff wanted to purchase a vehicle. The dealer primarily finances its automotive loans through Defendant, United.

29. To obtain the financing, Plaintiff signed a United standard form Installment Contract, attached hereto as Exhibit A.

30. In the "Itemization of Amount Financed" paragraph on page 1 of United's standard form Installment Contract with Plaintiff, the total amount United financed to Plaintiff was $14,698.24. *See* Exhibit A.

31. United's standard form Installment Contract with Plaintiff contains a paragraph titled "Itemization of Amount Financed," which declares that $12,401.64 is the cash price of the Avenger itself, including a sales tax, any accessories, their installation, and taxes. *See* Exhibit A.

32. Plaintiff's "Itemization of Amount Financed" on Page 2 which also includes standard practice financing for amounts in excess of the cost of the vehicle that are credit related costs, specifically, financing for a Document Preparation Fee of $250; a Processing Fee of $250.00; and a fee for GAP of $395.00. *See* Exhibit A.

33. United's standard form Installment Contract that provides financing for the additional amounts related to financing is subject to the MLA's protections because each of those costs in and of itself is a credit-related cost above the purchase price of the vehicle.

34. United in its standard form Installment Contract, page 1, does not properly categorize the costs which should be included in the "Military Annual Percentage Rate" and, instead includes costs such as the GAP and document preparation fee costs in the "amount financed." As a result, United has under disclosed and misstated the MAPR as defined by the MLA. As a result of this under disclosure, United has violated the MLA in its uniform and standardized contracts.

35. United's standard form Installment Contract contains a paragraph labeled "Arbitration Provision," which requires Plaintiff to submit to arbitration for any dispute arising with United, which is unlawful under the MLA.

36. Upon information and belief, United has entered into thousands of installment contracts financing credit-related costs identical to Plaintiff's Retail Installment Agreement, which also include unlawful mandatory arbitration provisions and limitations of damages.

37. Each United standard form Installment Contract executed by a servicemember, their spouse or a dependent of a servicemember is void under the MLA where it (a) fails to properly disclose the MAPR as a result of excluding costs which should be included in the MAPR such as credit insurance and GAP costs; (b) as a result of this under-disclosure of the MAPR that was not properly disclosed; and/or that (c) contains a mandatory arbitration clause.

## CLASS ALLEGATIONS

38. Plaintiff brings this case as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed classes include all covered borrowers in the United States as defined by the MLA that entered into an Installment Contract in substantially the same form as Exhibit A and are further defined as follows:

> **Arbitration Clause Class:** Where the contract contains an arbitration provision in substantially the same form as Exhibit A.
>
> **MLA TILA Disclosure Class:** Where financed amounts in excess of the vehicle cost for a Document Preparation Fee, for GAP Coverage, and/or a Processing Fee and contains an MAPR disclosure that does not include all MAPR costs related to financing therefore underdisclosing the MAPR.

39. Collectively, the Classes are referred to herein as the "Class." Expressly excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and its legal representatives, assigns and successors; and (c) all persons who properly execute and

file a timely request for exclusion from the Class.

40. Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

### Rule 23(a) Criteria

41. <u>Numerosity</u>. United's scheme has harmed and continues to harm military consumers. The members of the proposed Class are so numerous that joinder of all members is impracticable.

42. The exact number of Class members is unknown as such information is in the exclusive control of United. However, upon information and belief, United is one of the ten largest non-prime automobile lenders in the United States. It currently has over 4,500 auto dealer customers and has provided auto loans totaling over $350 million to over 53,000 borrowers. Furthermore, due to the nature of the trade and commerce involved and the fact that United is a sub-prime finance company providing financing to automotive dealers at locations many of which are located near military bases, Plaintiff believes the Class consists of easily thousands of consumers. The Defendant makes these loans to dealers located at geographically dispersed locations throughout the United States, making joinder of all Class members impracticable.

43. <u>Commonality</u>. Common questions of law and fact affect the right of each Class member and common relief by way of damages is sought for Plaintiff and Class members.

44. The harm that United has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

    a. Whether United entered into standard form Installment Contracts with servicemembers and their dependents;

    b. Whether in its standard form Installment Contracts with servicemembers and their dependents, United financed amounts in

excess of the cost of the vehicle that were credit-related costs under the MLA;

 c. Whether the fees in addition to the cost of the vehicle itself are credit-related costs under the MLA;

 d. Whether United failed to provide accurate MAPR disclosures when it failed to include credit insurance and GAP costs when calculating the MAPR;

 e. Whether United's standard form Installment Contracts contain an arbitration clause in violation of the MLA;

 f. Whether the total MAPR taking all appropriate costs into consideration exceeded the maximum MAPR permitted under the MLA;

 g. Whether members of the Class are entitled to rescission or reformation under the MLA; and

 h. Whether members of the Class have sustained damages and, if so, the proper measure of such damages;

45. <u>Typicality</u>. The claims and defenses of the representative Plaintiff is typical of the claims and defenses of the Class because he is an active duty member of the United States Military and his transaction with the Defendant was typical of the type of car purchase and finance that Defendant normally does. The documents involved in the transaction were standard form documents and the violations are statutory in nature. Plaintiff suffered damages of the same type and in the same manner as the Class he seeks to represent. There is nothing peculiar about Plaintiff's claims.

46. <u>Adequacy</u>. The representative Plaintiff will fairly and adequately assert and protect the interests of the Class. He has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the class and he has no conflict of interest that will interfere with maintenance of this class action.

**Rule 23 (b) Criteria**

47. <u>Predominance and Superiority</u>. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

    a. The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the MLA require a simple identification of those consumers who are covered members under the statute, an act that could have and should have been done at the time of application.

    b. The Class is so numerous as to make joinder impracticable. However, the Class is not so numerous as to create manageability problems. There are no unusual legal or factual issues that would create manageability problems;

    c. Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

    d. Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

    e. Upon information and belief, Defendant is responsible for violating the MLA within this District, making this forum appropriate for the litigation of the claims of the entire Class; and

    f. the claims of the individual Class members are small in relation to the expenses of litigation, making a Class action the only procedural method of redress in which Class members can, as a practical matter, recover.

48. Defendant has acted and refused to act on grounds generally applicable to

the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Classes as a whole. Defendant should be enjoined from financing to consumers without making a reasonable effort to determine whether a borrower is protected by the MLA; from charging for credit-related costs without providing an accurately calculated and disclosed MAPR so that servicemembers and their dependents can base their credit decisions on correct costs of credit disclosures; from under-disclosing the MAPR as a result of its failure to include MAPR costs in the MAPR calculations. Such costs include GAP and credit insurance-related disclosures. United should additionally be enjoined from including mandatory arbitration and limitation of damage clauses in their Installment Contracts that are subject to MLA protection.

## COUNT I
### Violation of the Military Lending Act
### 10 U.S.C. 987 (e)(3)
### (On Behalf of the Arbitration Clause Class)

49. Plaintiff repeats and re-alleges paragraphs 1 through 46 as if set forth herein full.

50. Plaintiff was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. §232.3(g)(1) and (g)(2)(i).

51. United was a "creditor" which provided "credit" to Plaintiff as those terms are defined in 32 C.F.R. §232.3(h) and (i).

52. On October 12, 2018, Plaintiff entered into a standard form Installment Contract with United, which was utilized for all Class members, that financed credit related costs in amounts in excess of the costs of Plaintiff's and Class members' vehicles, subjecting United to MLA protections pursuant to 82 Fed. Reg. 239, at 58740 (Dec. 14, 2017).

53. Plaintiff's and Class members' Installment Contracts contain a mandatory arbitration clause under the paragraph titled "Arbitration Provision" which states that it applies to "all claims and disputes arising from this contract."

54. The MLA 10 U.S.C. § 987(e)(3) declares that requiring covered borrowers to submit to arbitration is unlawful:

> Limitations. —It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which—
>
> (3) the creditor requires the borrower to submit to arbitration or imposes onerous legal notice provisions in the case of a dispute.

55. United's Installment Contract Arbitration Provision violates Plaintiff's and Class members' MLA 10 U.S.C. § 987(e)(3) rights prohibiting agreements that require arbitration to resolve disputes.

56. As a direct and proximate result of United's violation of 10 U.S.C. § 987(e)(3). Plaintiff and Class members have been harmed and suffered actual damages (as defined by the MLA) by their standard form Installment Contracts containing unlawful provisions requiring arbitration to resolve disputes with United.

57. The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

58. The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

59. Thus, all United Installment Contracts similar to Plaintiff's Installment Contract that contains on page 4 a paragraph titled "Arbitration Agreement" are void, must be either reformed or rescinded, and restitution must be paid for all amounts paid by class members to United, "[b]y declaring certain contracts void, [the MLA] by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere[,]" for "[a] person with the power to void a contract ordinarily may

resort to a court to have the contract rescinded and to obtain restitution of consideration paid." *Id.* at 18, 100 S.Ct. 242. This scheme "displays a [congressional] intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, at 286 (2001) (citing *Transamerica*, 444 U.S. at 15, 100 S.Ct. 242).

60. Plaintiff and the Class seek statutory damages in the amount of $500 per violation, actual and punitive damages, along with injunctive relief pursuant to the MLA 10 U.S.C. § 987(f)(5)(A).

61. Plaintiff and the Class seek attorney fees and costs pursuant to the MLA 10 U.S.C. § 987(f)(5)(B).

## COUNT II
### Violation of the Military Lending Act
### 10 U.S.C. 987 (e)
### (Limitations on Damages Class)

62. Plaintiff repeats and re-alleges paragraphs 1 through 59 as if set forth herein full.

63. Plaintiff was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. §232.3(g)(1) and (g)(2)(i).

64. United was a "creditor" which provided "credit" to Petty Officer 3rd Class Plaintiff as those terms are defined in 32 C.F.R. §232.3(h) and (i).

65. On November 29, 2019, Plaintiff entered into a standard form Installment Contract with United, which was utilized for all Class members, that financed credit-related costs in amounts in excess of the costs of Plaintiff's and class members' vehicles, subjecting United to MLA protections pursuant to 82 Fed. Reg. 239, at 58740 (Dec. 14, 2017).

66. Plaintiff's and Class members' Installment Contract, page 4, contains the following limitation of damages clause under the paragraph titled "Limitation of Damages":

> Limitation on Damages: Unless prohibited by law, you shall not be entitled to recover from us any consequential, incidental or punitive damages, damages to property or damages for loss of use, loss of time, loss of

profits, or income or any other similar damages. We are not liable for any failure or delay in delivering the Vehicle to you if it is beyond our control, not our fault or we are not negligent.

67. The MLA 10 U.S.C. § 987(e)(2) declares that requiring the borrower to limit his or her legal right to damages as unlawful:

> Limitations. —It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which—
>
> The borrower is required to waive the borrower's right to legal recourse under any otherwise applicable provision of State or Federal law, including any provision of the Servicemembers Civil Relief Act (50 U.S.C. 3901 et seq.)

68. United's standard form Installment Contract, page 4, paragraph titled "Limitation on Damages" violates Plaintiff's and Class members' MLA 10 U.S.C. § 987(e)(32) rights prohibiting agreements that requires the military borrower to waive his or her rights to legal recourse under any otherwise applicable provision of state or federal law by.

69. As a direct and proximate result of United's violation of 10 U.S.C. § 987(e)(2). Plaintiff and Class members are entitled to statutory damages, have been harmed and suffered actual damages (as defined by the MLA) by their standard form Installment Contracts containing an unlawful provision requiring borrowers to limit their damages against United.

70. The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

71. The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19

(1979).

72. Thus, all Class members' United Installment Contracts that are similar to Plaintiff's Installment Contract which contain page 4, paragraph titled "Limitation on Damages" are void, must be rescinded, and restitution must be paid for all amounts paid by Plaintiff and class members to United, "[b]y declaring certain contracts void, [the MLA] by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere[,]" for "[a] person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid." *Id.* at 18, 100 S.Ct. 242. This scheme "displays a [congressional] intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, at 286 (2001) (citing *Transamerica*, 444 U.S. at 15, 100 S.Ct. 242).

73. As a direct and proximate result of United's violations of the MLA, Plaintiff and the Class are entitled to statutory damages in the amount of $500 per violation, actual and punitive damages, along with injunctive relief pursuant to The MLA 10 U.S.C. § 987(f)(5)(A).

74. Plaintiff and the Class seek attorney fees and costs pursuant to the MLA 10 U.S.C. § 987(f)(5)(B).

## COUNT III
### Violation of the Military Lending Act
### 10 U.S.C. §987(c)(1)
### (MLA TILA Disclosure Class)

75. Plaintiff repeats and re-alleges paragraphs 1 through 59 as if set forth herein full.

76. Petty Officer 3rd Class Plaintiff was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. §232.3(g).

77. United was a "creditor" which provided "credit" to Petty Officer 3rd Class Plaintiff as those terms are defined in 32 C.F.R. §232.3(h) and (i).

78. On November 29, 2019 Plaintiff entered into a standard form Installment

Contract with United, which was utilized for all Class members, that financed credit-related costs in amounts in excess of the costs of Plaintiff's and Class members' vehicles, subjecting United to MLA protections pursuant to 82 Fed. Reg. 239, at 58740 (Dec. 14, 2017).

79. Specifically, the credit related costs United financed was GAP Coverage ($395.00). *See* Exhibit A.

80. Plaintiff's and Class members' standard form Installment Contracts do not include these costs in the MAPR calculations and, therefore, have under-disclosed the costs of Plaintiff's and Class members' Installment Contracts. In other words, the costs of their credit are significantly more than the United disclosures state. By incorrectly disclosing the MAPR, United has also misstated and under-disclosed the finance charges for the Class members' Installment Contracts.

81. The MLA requires the following mandatory loan disclosures:

(1) Information required.--With respect to any extension of consumer credit (including any consumer credit originated or extended through the internet) to a covered member or a dependent of a covered member, a creditor shall provide to the member or dependent the following information orally and in writing before the issuance of the credit:

(A) A statement of the annual percentage rate of interest applicable to the extension of credit.

(B) Any disclosures required under the Truth in Lending Act (15 U.S.C. 1601 *et seq*.).

(C) A clear description of the payment obligations of the member or dependent, as applicable.

82. The MAPR should include 1) any credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement and 2) any fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit or an account for open-end credit. 32 C.F.R. Section 232.4. United did not include these

costs in its MAPR calculations disclosed to Class members.

83. Specifically, United's standard form Installment Contract failed to provide Plaintiff and Class members the mandatory disclosure required by 10 U.S.C. § 987(c)(1) for at minimum the following credit-related costs: a document preparation fee of $250; a processing fee of $250.00; a fee for GAP of $395.00. *See* Exhibit A.

84. Plaintiff and Class members incurred damages as a direct and proximate result of United's violation of 10 U.S.C. § 987(c)(1). Plaintiff and Class members have been harmed and suffered actual damages (as defined by the MLA) by their standard form Installment Contracts failing to provide the mandatory MLA disclosures under 10 U.S.C. § 987(c)(1).

85. The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

86. The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

87. As a direct and proximate cause of United's violation, Plaintiff and the Class are entitled statutory damages of $500 per violation, actual and punitive damages along with injunctive relief pursuant to the MLA 10 U.S.C. § 987(f)(5)(A).

88. Plaintiff and the Class are entitled to attorney fees and costs pursuant to the MLA 10 U.S.C. § 987(f)(5)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

A. Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and

17
CLASS ACTION COMPLAINT

appointing undersigned as Class Counsel;

      B.    Declaring that Defendant violated the MLA, and adjudging that Plaintiff's and Class members' Installment Contracts are void and determining appropriate relief in the form of rescission, restitution or reformation;

      C.    Adjudging that Defendant violated the MLA and award Plaintiff and Class members statutory damages of $500 per violation, actual and punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A);

      D.    Awarding Plaintiff, and all those similarly situated, reasonable attorney's fees and costs incurred in this action pursuant to 10 U.S.C. § 987(f)(5)(B);

      E.    Enjoin United from further violating the MLA with their Installment Contracts;

      F.    Enjoin United from financing to consumers without making a reasonable effort to determine whether a borrower is protected by the MLA;

      G.    Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

      H.    Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

Dated: April 1, 2020                Respectfully submitted,

**AHDOOT & WOLFSON, PC**

/s/ Tina Wolfson
Tina Wolfson
Ruhandy Glezakos
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-474-8585

twolfson@ahdootwolfson.com
rglezakos@ahdootwolfson.com

*Counsel for Plaintiff Jerry Davidson, individually and on behalf of all others similarly situated*