1  Tina Wolfson, SBN 174806
2  twolfson@ahdootwolfson.com
   Ruhandy Glezakos, SBN 307473
3  rglezakos@ahdootwolfson.com
4  AHDOOT & WOLFSON, PC
   10728 Lindbrook Drive
5  Los Angeles, CA 90024
6  Tel: 310-474-9111; Fax: 310-474-8585

7  Janet R. Varnell, *pro hac vice*
8  jvarnell@varnellandwarwick.com
   VARNELL & WARWICK, P.A.
9  1101 E. Cumberland Ave., Ste. 201H, #105
   Tampa, FL 33602
10 Tel: (352) 753-8600; Fax: (352) 504-3301
11
12 *Counsel for Plaintiff Jerry Davidson, individually*
   *and on behalf of all others similarly situated*
13

**FILED**
CLERK, U.S. DISTRICT COURT

July 16, 2020

CENTRAL DISTRICT OF CALIFORNIA
BY: ____KD____ DEPUTY

14     **UNITED STATES DISTRICT COURT**
15     **CENTRAL DISTRICT OF CALIFORNIA**

16  JERRY DAVIDSON, individually, and on       Case No.: 8:20-cv-00636
    behalf of all others similarly situated,
17                                             SECOND AMENDED CLASS
18                      Plaintiff,             ACTION COMPLAINT

19                  v.

20                                             JURY TRIAL DEMANDED
    UNITED AUTO CREDIT CORPORATION,
21  a California corporation,

22
                       Defendant.
23

24
25
26
27
28

- 1 -
SECOND AMENDED COMPLAINT

1
2

**SECOND AMENDED CLASS ACTION COMPLAINT**

3

Plaintiff, JERRY DAVIDSON, individually and on behalf of all others

4

similarly situated, sues Defendant, UNITED AUTO CREDIT CORPORATION, a

5
6

California corporation, and alleges:

7

**INTRODUCTION**

8

1.    This Complaint seeks to enforce the Military Lending Act, 10 U.S.C. §

9
10

987, ("MLA") enacted to protect members of the United States Military from an

11

epidemic of predatory lending that endangers our Nation's military readiness and

12

impacts service member retention. The MLA was specifically enacted to regulate the

13
14

commercial lending practices and products offered to covered borrowers who are

15

active duty military and their dependents.

16
17

2.    UNITED AUTO CREDIT CORPORATION ("Defendant" or "United")

18

is a sub-prime lending corporation who, among other things, finances loans for

19

automotive dealers throughout the United States.

20
21

3.    Plaintiff JERRY DAVIDSON ("Plaintiff") was on active duty status

22

with the United States Army, working as an Aviation Operations Supervisor. He was

23

and still is married to Rebecca Ollison, who is an active duty member of the United

24
25

States Army currently stationed at Fort Belvoir, Virginia. In October of 2018,

26

Plaintiff obtained financing from United that qualified for MLA protections.

27

4.    United is subject to the MLA's mandatory disclosures and limitations

28

because it extends consumer credit to covered borrowers. It has a duty to make

reasonable inquiry when lending money as to whether the borrower is a covered member under the MLA. As part of the implementing regulations, a database was created to assist lenders with the identification of the borrowers that Congress sought to protect. United does not make any inquiry, let alone a reasonable inquiry before offering financing to members of the United States Military, such as Plaintiff.

5.      United's standard form Installment Contract with Plaintiff fails to comply with the MLA because it requires Plaintiff to submit to arbitration, does not provide required written or oral disclosures, does not provide accurate MLA cost of credit financing disclosures, and misstates the Military Annual Percentage Rate which was 3.32% higher than what was listed on the contract, each of which are violations of the MLA.

6.      The MLA's "Penalties and Remedies" provides that a violation of the MLA renders the contract void from inception.

7.      Upon information and belief, United's unlawful and deceptive conduct uses a uniform process on all of the loans it provides throughout the United States in that it fails to make any inquiry to determine a borrower's status that would prescribe MLA protections and disclosures. Because United does not inquire of its borrowers about their status and because United utilizes standard form Installment Contracts and methods of calculation in determining the cost of credit disclosures on the contracts, this case is well suited for class action treatment for violations of the MLA.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over this matter pursuant to 10 U.S.C.A. § 987, 28 U.S.C. §1331 and 1337.

9.    Venue is proper in this district pursuant to 10 U.S.C.A. § 987 and 28 U.S. §1391.

## PARTIES

10.    At all times material hereto, Plaintiff Davidson was sui juris and a resident of Virginia.

11.    At all times material hereto, United, was and is a California corporation, headquartered in Newport Beach, California. At all times material hereto, United finances motor vehicles in throughout the United States.

12.    At all times relevant hereto, Plaintiff was on active duty status with the United States Army and his wife who is co-obligor on the loan was and is on active duty military status.

## FACTUAL ALLEGATIONS

### The Military Lending Act, 10 U.S.C. §987

13.    The United States Congress passed the Military Lending Act of 2006 (hereinafter "MLA") and was implemented as part of the John Warner National Defense Authorization Act for Fiscal Year 2007, Section 670, to protect military servicemembers from unfair or abusive loan or credit sale transactions, such as high

interest, short-term, or installment loans to inexperienced military borrowers, who in years prior to enactment had fell victim to predatory lending.

14.   The MLA directs the Secretary of Defense to prescribe regulations to carry out the MLA, specifically to include definitions for the terms "creditor," "consumer credit" and "finance charges" for purposes of calculating the Military Annual Percentage Rate ("MAPR").

15.   The MLA requires certain disclosure when it extends "consumer credit" to covered borrowers and directs the Secretary of Defense to prescribe regulations to carry out the purpose of the MLA, specifically to include definitions for terms "creditor" and "consumer credit."

16.   Under the MLA, creditors must provide specific written and oral disclosures pursuant to 32 CFR § 232.6 relating to the cost of credit, such as a statement of Military Annual Percentage Rate (MAPR) and a clear description of payment obligations.

17.   The MLA also prohibits creditors from requiring military borrowers to submit to arbitration and waive legal rights, such as an award of punitive damages, under state and federal law.

18.   There is an exception to the definition of "consumer credit" for credit extended for the purchase of a motor vehicle or personal property that, as a general rule, exempts purchase-money automotive loans from coverage of the MLA. However, a transaction can lose qualification for the exemption by including

additional credit-related costs within the loan. Therefore, a purchase money vehicle loan that also includes a credit-related product or service such as GAP removes the loan from the exclusion.

19.    The Retail Installment Contract and Security Agreement presented to Plaintiff included amounts in addition to the cost of the vehicle and the costs related to the vehicle. Specifically, the transaction included GAP protection and other credit extended primarily for personal, family, or household purposes that is subject to a finance charge which meets the definition of consumer credit pursuant to CFR 232.3.

20.    The MLA places a duty on creditors to determine whether a potential borrower is a "covered borrower" and provides an easy to implement safe harbor to protect a creditor from liability if they reasonably implement the procedure. Specifically, the MLA permits creditors to use two methods when ascertaining whether a consumer is a covered borrower for purposes of the MLA's protections: (1) The MLA Database maintained by the Department of Defense, and (2) consumer reports from a nationwide credit reporting agency. Despite the MLA's grant of a safe harbor if either of these methods are used, upon information and belief, United systematically fails to implement policies and procedures to ascertain whether a consumer is a military borrower subject to the MLA protections just as it did in the case of the Plaintiff. Additionally, United fails to make even the most basic inquiry as to whether its borrowers are subject to the MLA as part of its application process.

**United**

21.     United is a lending creditor for vehicles purchased throughout the United States. It forms relationships with subprime auto dealerships through its "Dealer Partner" program which enrolls dealerships and agrees to accept assignment of loans and has "standard stipulations" which do not include any guidance about lending to borrowers covered by the Military Lending Act.

22.     United has financed tens of thousands of automobile loans totaling hundreds of millions of dollars.

23.     It currently has over 4,500 auto dealer customers and has provided auto loans totaling over $350 million to over 53,000 borrowers.

24.     Upon information and belief, United employs standard form Retail Purchase Agreements and Retail Installment Contracts for loans at all of their locations across the United States, with no relevant variations.

25.     Despite providing financing for thousands of automotive dealer locations across the United States, upon information and belief, United has systematically failed to develop policies and procedures to ascertain if a consumer is a military service member subject to the MLA and to conform those loans to the dictates of the MLA.

26.     United has uniformly and systematically failed to implement policies and procedures to ensure compliance with the MLA's mandatory disclosures and limitations as part of their standard form Retail Installment Contracts that United uses

uniformly.   There is no mention of MLA protections appearing anywhere on Plaintiff's loan agreement and none were provided.

**Plaintiff's Loan**

27.     Plaintiff serves in the United States Army.

28.     On October 13, 2018, Plaintiff went to "Select Cars of Thornburg" in Fredericksburg, Virginia near where Plaintiff is stationed. Plaintiff wanted to purchase a vehicle. The dealer primarily finances its automotive loans through Defendant, United. Plaintiff provided his social security number and other credit information to the automotive dealer.  Neither the dealer nor United who provided the financing on the same day provided any disclosure to Plaintiff of his rights pursuant to the MLA.

29.     To obtain the financing, Plaintiff signed a United standard form Installment Contract, attached hereto as Exhibit A.

30.     In the "Itemization of Amount Financed" paragraph on page 1 of United's standard form Installment Contract with Plaintiff, the total amount United financed to Plaintiff stated $14,698.24 and the annual percentage rate was stated as 22.99%. *See* Exhibit A. No Military Annual Percentage Rate (MAPR) was stated on any document provided to Plaintiff.

31.     The "Itemization of Amount Financed" on Page 2 of Plaintiff's contract sets forth amounts in excess of the cost of the vehicle that are credit related costs, specifically, a Processing Fee of $250.00; and a fee for GAP of $395.00 and stated in

a line item labeled "Prepaid Interest N/A" even though the transaction included $129.61 in prepaid interest. *See* Exhibit A.

32.     United's standard form Installment Contract that provides financing for the additional consumer credit which causes such transactions to be subject to the MLA's protections.

33.     United standard form Installment Contracts fail to properly disclose the accurate finance charges as defined by the MLA, fail to provide the standard written MLA disclosures, and because the original creditors do not provide oral disclosures, the Contracts fail to provide a method to obtain the oral disclosures as required by the MLA and the Code of Federal Regulations. Each of these failures are separate violations the MLA.

34.     United's standard form Installment Contract also contains a paragraph labeled "Arbitration Provision," which requires Plaintiff to submit to arbitration for any dispute arising with United, which is unlawful under the MLA and is a separate violation of the MLA.

35.     Upon information and belief, United has entered into thousands of installment contracts financing credit-related costs identical to Plaintiff's Retail Installment Agreement, which also include unlawful mandatory arbitration provisions.

36.     Each United standard form Installment Contract executed by a servicemember, their spouse or a dependent of a servicemember is void under the

MLA where it (a) fails to provide the written and oral disclosures required by the MLA; (b) fails to properly disclose the true cost of financing calculated pursuant to the MLA; and that (c) contains a mandatory arbitration clause.

## CLASS ALLEGATIONS

37.    Plaintiff brings this case as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed classes include all covered borrowers in the United States as defined by the MLA that entered into an Installment Contract in substantially the same form as Exhibit A and are further defined for each separate violation as follows:

> **MLA Disclosure Class:** Where United failed to provide written and oral disclosures pursuant to the Code of Federal Regulation;

> **MLA Inaccurate Cost of Credit Class:** Where United failed to provide properly calculated MLA Cost of Credit Disclosures.

> **Arbitration Clause Class:** Where the contract contains an arbitration provision in substantially the same form as Exhibit A.

38.    Collectively, the Classes are referred to herein as the "Class." Expressly excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendant and any entity in which Defendant has a controlling interest, or which has a controlling interest in Defendant, and its legal representatives, assigns and successors; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

39.     Plaintiff reserves the right to amend the Class definitions if further investigation and discovery indicates that the Class definitions should be narrowed, expanded, or otherwise modified.

**Rule 23(a) Criteria**

40.     <u>Numerosity</u>. United's scheme has harmed and continues to harm military consumers. The members of the proposed Class are so numerous that joinder of all members is impracticable.

41.     The exact number of Class members is unknown as such information is in the exclusive control of United. However, upon information and belief, United is one of the ten largest non-prime automobile lenders in the United States. It currently has over 4,500 auto dealer customers and has provided auto loans totaling over $350 million to over 53,000 borrowers. Furthermore, due to the nature of the trade and commerce involved and the fact that United is a sub-prime finance company providing financing to automotive dealers at locations many of which are located near military bases, Plaintiff believes the Class consists of easily thousands of consumers. The Defendant makes these loans to dealers located at geographically dispersed locations throughout the United States, making joinder of all Class members impracticable.

42.     <u>Commonality</u>. Common questions of law and fact affect the right of each Class member and common relief by way of damages is sought for Plaintiff and Class members.

SECOND AMENDED COMPLAINT

43.     The harm that United has caused or could cause is substantially uniform with respect to Class members. Common questions of law and fact that affect the Class members include, but are not limited to:

a.     Whether United entered into standard form Installment Contracts with servicemembers and their dependents;

b.     Whether in its standard form Installment Contracts with servicemembers and their dependents, United financed amounts in excess of the cost of the vehicle that were credit-related costs under the MLA;

c.     Whether the fees in addition to the cost of the vehicle itself are credit-related costs under the MLA;

d.     Whether United failed to provide required MLA written and oral disclosures;

e.     Whether United failed to provide accurate MAPR disclosures;

f.     Whether United's standard form Installment Contracts contain an arbitration clause in violation of the MLA;

g.     Whether the Contracts are void and what the appropriate remedy should be; and

h.     Whether members of the Class have sustained damages in addition to statutory damages and, if so, the proper measure of such damages;

44.   <u>Typicality</u>. The claims and defenses of the representative Plaintiff are typical of the claims and defenses of the Class because he is an active duty member of the United States Military and his transaction with the Defendant was typical of the type of car purchase and finance arrangement that Defendant normally does. The documents involved in the transaction were standard form documents and the violations are statutory in nature. Plaintiff suffered statutory and actual damages of the same type and in the same manner as the Class he seeks to represent. There is nothing peculiar about Plaintiff's claims.

45.   <u>Adequacy</u>. The representative Plaintiff will fairly and adequately assert and protect the interests of the Class. Plaintiff has no conflict of interest that will interfere with maintenance of this class action. He has hired attorneys who are experienced in prosecuting class action claims and consumer protection laws and will adequately represent the interests of the class.

### Rule 23 (b) Criteria

46.   <u>Predominance and Superiority</u>. A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

    a.   The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members. The statutory claims under the MLA require a simple identification of those consumers who are covered members under

the statute accomplished through the MLA database, an act that could have and should have been done at the time of application.

b.   The Class is so numerous as to make joinder impracticable. However, the Class is not so numerous as to create manageability problems. There are no unusual legal or factual issues that would create manageability problems;

c.   Prosecution of a separate action by individual members of the Class would create a risk of inconsistent and varying adjudications against Defendant when confronted with incompatible standards of conduct;

d.   Adjudications with respect to individual members of the Class could, as a practical matter, be dispositive of any interest of other members not parties to such adjudications, or substantially impair their ability to protect their interests;

e.   Upon information and belief, Defendant is responsible for violating the MLA within this District, making this forum appropriate for the litigation of the claims of the entire Class; there are very few attorneys in the United States with any expertise or experience in this nascent area of law making it nearly impossible for class members to find adequate representation; and the claims of the individual Class members are small in relation to the

expenses and efforts required by the litigation, making a Class action the only procedural method of redress in which Class members can, as a practical matter, recover.

47.     Defendant has acted and refused to act on grounds generally applicable to the Class, thereby making declaratory relief and corresponding final injunctive relief under Rule 23(b)(2) appropriate with respect to the Classes as a whole. Defendant should be enjoined from financing to consumers without making a reasonable effort to determine whether a borrower is protected by the MLA; from entering into agreements with covered borrowers without providing mandated written and oral disclosures; and from charging for credit-related costs without providing an accurately calculated and Cost of Credit disclosures so that servicemembers and their dependents can base their credit decisions on correct costs of credit disclosures required by the MLA. United should additionally be enjoined from including arbitration clauses in their Installment Contracts that are subject to MLA protection.

### COUNT I
### Violation of the Military Lending Act
### 10 U.S.C. §987(c)(1)
### (MLA Disclosure Class)

48.     Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 47 as if set forth herein in full.

49.     Servicemember Plaintiff was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. §232.3(g).

50.   United was a "creditor" which provided "credit" to Servicemember Plaintiff as those terms are defined in 32 C.F.R. §232.3(h) and (i).

51.   On October 13, 2018, Plaintiff entered into a standard form Installment Contract with United, which was utilized for all Class members, that financed credit-related costs in amounts in excess of the costs of Plaintiff's and Class members' vehicles, subjecting United to MLA regulations.

52.   Specifically, the identifiable credit-related costs United financed were a) GAP Coverage ($395.00); b) Processing Fee ($250.00); and completely undisclosed Prepaid Interest ($129.61). *See* Exhibit A.

53.   Plaintiff's and Class members' standard form Installment Contracts do not provide required MLA written and oral disclosures in the manner required by 10 U.S.C. § 987 and 32 CFR § 232.6.

54.   The MLA requires the following mandatory loan disclosures be made to a covered borrower before or at the time the borrower becomes obligated on a closed-end transaction of the type involved here:

A.   A statement of the applicable MAPR;

B.   Any disclosures required by Regulation Z;

C.   A clear description of the payment obligation which would include a payment schedule for this closed-end credit.

55.   The written MAPR disclosures do not need to be expressed in a numerical value and may be made in the contract itself or may be given on a separate

document. The CFR even provides in section (c)(3) model disclosure language to satisfy this requirement which explains to the borrower costs of credit transaction by describing some of the fees and costs that must be included in the annual percentage rate.

56.     The annual percentage rate when properly calculated pursuant to the MLA is known as the Military Annual Percentage Rate or "MAPR" and should include 1) any credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement and 2) any fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit or an account for open-end credit pursuant to 32 C.F.R. § 232.4. The true MAPR for Plaintiff was 26.31% and not 22.99%. United did not include these costs in its cost of credit disclosures to Plaintiff or to Class members.

57.     Plaintiff and Class members incurred damages as a direct and proximate result of United's violation of 10 U.S.C. § 987(c)(1) by their standard form Installment Contracts failing to provide the mandatory MLA disclosures under 10 U.S.C. § 987(c)(1).

58.     The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

59.    The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

60.    As a direct and proximate cause of United's violation, Plaintiff and the Class are entitled to statutory damages of $500 per violation, actual and punitive damages along with injunctive relief pursuant to the MLA 10 U.S.C. § 987(f)(5)(A).

61.    Plaintiff and the Class are entitled to attorney fees and costs pursuant to the MLA 10 U.S.C. § 987(f)(5)(B).

## COUNT II
## Violation of the Military Lending Act
## 10 U.S.C. §987(c)(1)
## (MLA TILA Disclosure Class)

62.    Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 47 as if set forth herein.

63.    Servicemember Plaintiff Davidson was a "covered borrower" and "covered member" as those terms are defined pursuant to 32 C.F.R. §232.3(g).

64.    United was a "creditor" which provided "credit" to Servicemember Plaintiff as those terms are defined in 32 C.F.R. §232.3(h) and (i).

65.    On October 13, 2018, Plaintiff entered into a standard form Installment Contract with United, which was utilized for all Class members, that financed credit-

related costs in amounts in excess of the costs of Plaintiff's and Class members' vehicles, subjecting United to MLA regulations.

66.     Specifically, the identifiable credit-related costs United financed were a) GAP Coverage ($395.00); b) Processing Fee ($250.00); and completely undisclosed Prepaid Interest ($129.61). *See* Exhibit A.

67.     Plaintiff's and Class members' standard form Installment Contracts provide standard TILA disclosures which do not include these costs in the disclosures and, therefore, under-disclosed the true cost of credit to Plaintiff and Class members under the Installment Contracts. In other words, the costs of their credit are significantly more than the United disclosures state and in the case of the Plaintiff was a full 3.32% higher than what was listed in the TILA disclosures.

68.     The MLA requires the following mandatory loan disclosures:

(1)     Information required.--With respect to any extension of consumer credit (including any consumer credit originated or extended through the internet) to a covered member or a dependent of a covered member, a creditor shall provide to the member or dependent the following information orally and in writing before the issuance of the credit:

(A)     A statement of the annual percentage rate of interest applicable to the extension of credit.

(B)     Any disclosures required under the Truth in Lending Act (15 U.S.C.1601 *et seq*.).

(C)     A clear description of the payment obligations of the member or dependent, as applicable.

69.     The annual percentage rate when properly calculated pursuant to the MLA is known as the Military Annual Percentage Rate or "MAPR" and should

include 1) any credit insurance premium or fee, any charge for single premium credit insurance, any fee for a debt cancellation contract, or any fee for a debt suspension agreement and 2) any fee for a credit-related ancillary product sold in connection with the credit transaction for closed-end credit or an account for open-end credit. 32 C.F.R. § 232.4. The true MAPR for Plaintiff was 26.31% and not 22.99%. United did not include these costs in its cost of credit disclosures to Plaintiff or to Class members.

70.    Specifically, failed to include at minimum the following credit-related costs: a processing fee of $250.00; a fee for GAP of $395.00 and failed to disclose a prepaid interest charge of $129.61. *See* Exhibit A.

71.    Plaintiff and Class members incurred damages as a direct and proximate result of United's violation of 10 U.S.C. § 987(c)(1). Plaintiff and Class members have been harmed and suffered actual damages (as defined by the MLA) by their standard form Installment Contracts failing to provide the mandatory MLA disclosures under 10 U.S.C. § 987(c)(1).

72.    The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

73.    The United States Supreme Court has held that "when Congress declare[s] in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or

for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, <u>444 U.S. 11</u>, at 19 (1979).

74.     As a direct and proximate cause of United's violation, Plaintiff and the Class are entitled statutory damages of $500 per violation, actual and punitive damages along with injunctive relief pursuant to the MLA <u>10 U.S.C. § 987(f)(5)(A)</u>.

75.     Plaintiff and the Class are entitled to attorney fees and costs pursuant to the MLA <u>10 U.S.C. § 987(f)(5)(B)</u>.

**COUNT III**
**Violation of the Military Lending Act**
**10 U.S.C. 987 (e)(3)**
**(On Behalf of the Arbitration Clause Class)**

76.     Plaintiff repeats and re-alleges the allegations in paragraphs 1 through 47 as if set forth herein.

77.     Plaintiff was a "covered borrower" and "covered member" as those terms are defined pursuant to <u>32 C.F.R. §232.3(g)(1)</u> and <u>(g)(2)(i)</u>.

78.     United was a "creditor" which provided "credit" to Plaintiff as those terms are defined in <u>32 C.F.R. §232.3(h)</u> and <u>(i)</u>.

79.     On October 13, 2018, Plaintiff entered into a standard form Installment Contract with United, which was utilized for all Class members, that financed credit related costs in amounts in excess of the costs of Plaintiff's and Class members' vehicles, subjecting United to MLA protections pursuant to 82 Fed. Reg. 239, at 58740 (Dec. 14, 2017).

80.     Plaintiff's and Class members' Installment Contracts contain a mandatory arbitration clause under the paragraph titled "Arbitration Provision" which states that it applies to "all claims and disputes arising from this contract."

81.     The MLA 10 U.S.C. § 987(e)(3) declares that requiring covered borrowers to submit to arbitration is unlawful:

> Limitations. —It shall be unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which—

> (3)  the creditor requires the borrower to submit to arbitration or imposes onerous legal notice provisions in the case of a dispute.

82.     United's Installment Contract Arbitration Provision violates Plaintiff's and Class members' MLA 10 U.S.C. § 987(e)(3) rights prohibiting agreements that require arbitration to resolve disputes.  Although the clause uses the feigns to be of an opt-out nature, it does not actually permit the consumer to opt-out as United can and does assert the arbitration clause defensively in order to block a consumer's access to the courts.

83.     As a direct and proximate result of United's violation of 10 U.S.C. §987(e)(3). Plaintiff and Class members have been harmed and suffered actual damages (as defined by the MLA) by their standard form Installment Contracts containing unlawful provisions requiring arbitration to resolve disputes with United.

84.     The MLA's "Penalties and Remedies" subsection provides, in part, that "any credit agreement, promissory note, or other contract prohibited under this section is void from the inception of such contract." 10 U.S.C. § 987(f)(3).

85.    The United States Supreme Court has held that "when Congress declare[s]in [a statute] that certain contracts are void, it intend[s] that the customary legal incidents of voidness follow, including the availability of a suit for rescission or for an injunction against continued operation of the contract, and for restitution." *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, at 19 (1979).

86.    Thus, all United Installment Contracts substantially similar to Plaintiff's Installment Contract entered into with a covered borrower containing an "Arbitration Agreement" are void, must be either reformed or rescinded, and restitution must be paid for all amounts paid by class members to United, "[b]y declaring certain contracts void, [the MLA] by its terms necessarily contemplates that the issue of voidness under its criteria may be litigated somewhere[,]" for "[a] person with the power to void a contract ordinarily may resort to a court to have the contract rescinded and to obtain restitution of consideration paid." *Id.* at 18, 100 S.Ct. 242. This scheme "displays a [congressional] intent to create not just a private right but also a private remedy." *Alexander v. Sandoval*, 532 U.S. 275, at 286 (2001) (citing *Transamerica*, 444 U.S. at 15, 100 S.Ct. 242).

87.    Plaintiff and the Class seek statutory damages in the amount of $500 per statutory violation, actual and punitive damages, along with injunctive relief pursuant to the MLA 10 U.S.C. § 987(f)(5)(A).

88.    Plaintiff and the Class seek attorney fees and costs pursuant to the MLA 10 U.S.C. § 987(f)(5)(B).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter an Order:

A.      Certifying this action as a class action as provided by Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as Class Representative, and appointing undersigned as Class Counsel;

B.      Declaring that Defendant violated the MLA, and adjudging that Plaintiff's and Class members' Installment Contracts are void and determining appropriate relief in the form of rescission, restitution or reformation;

C.      Adjudging that Defendant violated the MLA and award Plaintiff and Class members statutory damages of $500 per violation, actual and punitive damages pursuant to 10 U.S.C. § 987(f)(5)(A);

D.      Awarding Plaintiff, and all those similarly situated, reasonable attorney's fees and costs incurred in this action pursuant to 10 U.S.C. § 987(f)(5)(B);

E.      Enjoining United from financing to consumers without making a reasonable effort to determine whether a borrower is protected by the MLA;

F.      Enjoining United from further violating the MLA with their Installment Contracts and requiring future contracts with covered borrowers to provide proper disclosures pursuant to the MLA;

G.      Awarding Plaintiff, and all those similarly situated, any pre-judgment and post-judgment interest as may be allowed under the law; and

H.    Awarding such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues so triable.

**AHDOOT & WOLFSON, PC**

_____

Tina Wolfson
Ruhandy Glezakos
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-474-8585
twolfson@ahdootwolfson.com
rglezakos@ahdootwolfson.com

**VARNELL & WARWICK, P.A.**
Janet R. Varnell, *pro hac vice*
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, Florida 33602
Tel: 352-753-8600
Fax: 352-504-3301
jvarnell@varnellandwarwick.com

*Counsel for Plaintiff Jerry Davidson,
individually and on behalf of all others
similarly situated*

SECOND AMENDED COMPLAINT

1

## CERTIFICATE OF SERVICE

2

3

    I hereby certify that a copy of the foregoing was served on the following via the CM/ECF electronic filing system on the _____ day of June, 2020:

4

5

    Raymond Y. Kim
    Rachel Y. Chuang
    REED SMITH LLP
    355 South Grand Avenue
    Suite 2900
    Los Angeles, California 90071

6

7

8

9

10

11

_____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

**VA-103-ARB 10/10/2015**

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| Select Cars of Thornburg<br>8420 Jefferson Davis Hwy<br>Fredericksburg, VA 22407 | Rebecca Ollison<br>Jerry Davidson | No. **6425**<br>Date **10/13/2018** |

☐ Business, commercial or agricultural purpose Contract.

### Truth-In-Lending Disclosure

| Annual Percentage Rate<br>The cost of your credit as a yearly rate. | Finance Charge<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all scheduled payments. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of |
|---|---|---|---|---|
| **22.99** % | $ **7023.74** | $ **14698.24** | $ **21721.98** | $ **2500.00**<br>$ **24221.98** |

Payment Schedule. Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| **42** | $ **517.19** | Monthly, Beginning 11/27/18 |
| | $ | |
| | $ | |

**Security.** You are giving us a security interest in the Property purchased.

**Late Charge.** If all or any portion of a payment is not paid within 7 days of its due date, you will be charged a late charge of 5% of the unpaid amount of the payment due.

**Prepayment.** If you pay off this Contract early, you will not have to pay a penalty.

**Contract Provisions.** You can see the terms of this Contract for any additional information about nonpayment, default, any required repayment before the scheduled date, and prepayment refunds and penalties.

### Description of Property

| Year<br>2011 | Make<br>GMC | Model<br>Acadia | Style<br>SUV | Vehicle Identification Number | Odometer Mileage<br>141399 |
|---|---|---|---|---|---|
| ☐ New<br>☒ Used<br>☐ Demo | | Other: | | | |

### Description of Trade-In

The following notice applies if checked:

☐ **No Liability Insurance Included.**

### Conditional Delivery

☐ **Conditional Delivery.** If checked, you agree that the following agreement regarding securing financing ("*Agreement*") applies: _____ _____. The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

### Sales Agreement

**Payment.** You promise to pay us the principal amount of $ **14698.24** _____ plus finance charges accruing on the unpaid balance at the rate of **22.99** % per year from the date of this Contract until maturity. After maturity, or after you default and we demand payment, we will charge finance charges on the unpaid balance at **22.99** % per year. You agree to pay this Contract according to the payment schedule and late charge provisions shown in the *Truth-In-Lending Disclosure*. You also agree to pay any additional amounts according to the terms and conditions of this Contract.

Retail Installment Contract-VA Not for use in transactions secured by a dwelling.<br>Bankers Systems™ VMP®<br>Wolters Kluwer Financial Services © 2015

WLK-MVLFAZVA 12/2/2016

Page 1 of 6

**Down Payment.** You also agree to pay or apply to the Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the *Itemization of Amount Financed.*

☒ **Additional Charge.** You agree to pay a Document Preparation Fee of $ 250.00 that will be ☐ paid in cash. ☐ financed over the term of this Contract.

## Itemization of Amount Financed

| | | |
|---|---|---|
| a. **Cash Price** of Vehicle, etc. (incl. sales tax of $ 673.50 ) | $ | 16459.24 |
| b. Trade-in allowance | $ | N/A |
| c. Less: Amount owing, paid to (includes j): | | |
| | $ | N/A |
| d. Net trade-in (b-c; if negative, enter $0 here and enter the amount on line j) | $ | N/A |
| e. Cash payment | $ | 2500.00 |
| f. Manufacturer's rebate | $ | N/A |
| g. Other down payment (describe) Deferred Down | $ | N/A |
| h. **Down Payment** (d+e+f+g) | $ | 2500.00 |
| i. **Unpaid balance of Cash Price** (a-h) | $ | 13959.24 |
| j. Financed trade-in balance (see line d) | $ | N/A |
| k. Paid to public officials, including filing fees | $ | 94.00 |
| l. Insurance premiums paid to insurance company(ies) | $ | N/A |
| m. Service Contract, paid to: | | |
| | $ | N/A |
| n. Processing fee, paid to Seller | $ | 250.00 |
| o. To: for GAP | $ | 395.00 |
| p. To: | $ | N/A |
| q. To: | $ | N/A |
| r. To: | $ | N/A |
| s. To: | $ | N/A |
| t. To: | $ | N/A |
| u. To: | $ | N/A |
| v. To: | $ | N/A |
| w. To: | $ | N/A |
| x. To: | $ | N/A |
| y. **Total Other Charges/Amts Paid** (j thru x) | $ | 739.00 |
| z. **Prepaid Finance Charge** | $ | N/A |
| aa. **Amount Financed** (i+y-z) | $ | 14698.24 |

We may retain or receive a portion of any amounts paid to others.

*[This area intentionally left blank.]*

## Insurance Disclosures

**Credit Insurance.** Credit life and credit disability (accident and health) are not required to obtain credit and are not a factor in the credit decision. We will not provide them unless you sign and agree to pay the additional premium. If you want such insurance, we will obtain it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**
☐ Single   ☐ Joint   ☒ None
Premium $ N/A _____ Term _____
Insured _____

**Credit Disability**
☐ Single   ☐ Joint   ☒ None
Premium $ N/A _____ Term _____
Insured _____

Your signature below means you want (only) the insurance coverage(s) quoted above. If "None" is checked, you have declined the coverage we offered.

N/A

By: _____  DOB _____

N/A

By: _____  DOB _____

N/A

By: _____  DOB _____

**Property Insurance.** You must insure the Property. You may purchase or provide the insurance through any insurance company reasonably acceptable to us. Your choice of insurer will not affect our decision to extend credit or the terms of this Contract. The collision coverage deductible may not exceed $ N/A _____
If you get insurance from or through us you will pay
$ N/A _____ for 0 months of coverage.

This premium is calculated as follows:

| | | | |
|---|---|---|---|
| ☐ $ N/A Deductible, Collision Cov. | $ | N/A |
| ☐ $ N/A Deductible, Comprehensive | $ | N/A |
| ☐ Fire-Theft and Combined-Additional Cov. | $ | N/A |
| ☐ | $ | N/A |

☐ **Single-Interest Insurance.** You must purchase single-interest insurance as part of this sale transaction. You may purchase the coverage from a company of your choice, reasonably acceptable to us. If you buy the coverage from or through us, you will pay $ N/A _____ for _____ of coverage.

*[This area intentionally left blank.]*

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☐ **Service Contract**

| | |
|---|---|
| Term | |
| Price | $ N/A |
| Coverage | |

☒ **Gap Waiver or Gap Coverage**

| | |
|---|---|
| Term | |
| Price | $ 395.00 |
| Coverage | |

☐

| | |
|---|---|
| Term | |
| Price | $ N/A |
| Coverage | |

| | |
|---|---|
| By: Rebecca Ollison | 10/13/2018 |
| | Date |
| By: Jerry Davidson | 10/13/2018 |
| | Date |
| By: | Date |

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections.

**Purchase of Property.** You agree to purchase the Property from Seller, subject to the terms and conditions of this Contract. Seller will not make any repairs or additions to the Vehicle except as noted in the *Description of Property* section.

You have been given the opportunity to purchase the Property and described services for the Cash Price or the Total Sale Price. The *"Total Sale Price"* is the total price of the Property if you buy it over time.

**General Terms.** The Total Sale Price shown in the *Truth-In-Lending Disclosure* assumes that all payments will be made as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early.

We do not intend to charge or collect, and you do not agree to pay, any finance charge or fee that is more than the maximum amount permitted for this sale by state or federal law. If you pay a finance charge or fee that exceeds that maximum amount, we will first apply the excess amount to reduce the principal balance and, when the principal has been paid in full, refund any remaining amount to you.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Balloon Payment.** If any payment is more than 10% greater than the regular or recurring installment payments you may refinance it when due as provided by law.

**Governing Law and Interpretation.** This Contract is governed by the law of Virginia and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Default.** You will be in default on this Contract if any one of the following occurs (except as prohibited by law):

- ◆ You fail to perform any obligation that you have undertaken in this Contract.
- ◆ We, in good faith, believe that you cannot, or will not, pay or perform the obligations you have agreed to in this Contract.

If you default, you agree to pay our costs of collection, including fees for repossession, repair, storage and sale of the Property securing this Contract. You also agree to pay our reasonable attorneys' fees and legal expenses.

If an event of default occurs as to any of you, we may exercise our remedies against any or all of you.

**Remedies.** We may not accelerate payment or repossess any Property described in this Contract on account of late payment or nonpayment of an installment if you make payment (together with any agreed late charge) within 10 days of the date on which the installment was due. If you are in default on this Contract, we have all of the remedies provided by law and this Contract. Those remedies include:

- ◆ We may require you to immediately pay us, subject to any refund required by law, the remaining unpaid balance of the amount financed, finance charges and all other agreed charges.
- ◆ We may pay taxes, assessments, or other liens or make repairs to the Property if you have not done so. We are not required to do so. You will repay us that amount immediately. That amount will earn finance charges from the date we pay it at the post-maturity rate described in the *Payment* section until paid in full.
- ◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.
- ◆ We may immediately take possession of the Property by legal process or self-help, but in doing so we may not breach the peace or unlawfully enter onto your premises.
- ◆ We may then sell the Property and apply what we receive as provided by law to our reasonable expenses and then toward what you owe us.
- ◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

By choosing any one or more of these remedies, we do not give up our right to later use another remedy. By deciding not to use any remedy, we do not give up our right to consider the event a default if it happens again.

You agree that if any notice is required to be given to you of an intended sale or transfer of the Property, notice is reasonable if mailed to your last known address, as reflected in our records, at least 10 days before the date of the intended sale or transfer (or such other period of time as is required by law).

You agree that we may take possession of personal property left in or on the Property securing this Contract and taken into possession as provided above. You may have a right to recover that property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Waiver of Homestead Exemption.** You waive the benefit of your exemption as to the obligation under this Contract.

**Obligations Independent.** Each person who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You must pay this Contract even if someone else has also signed it.
- We may release any co-buyer or guarantor and you will still be obligated to pay this Contract.
- We may release any security and you will still be obligated to pay this Contract.
- If we give up any of our rights, it will not affect your duty to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your duty to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

## Security Agreement

**Security.** To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle, all accessions, attachments, accessories, and equipment placed in or on the Vehicle and in all other Property. You also assign to us and give us a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Duties Toward Property.** By giving us a security interest in the Property, you represent and agree to the following:

- You will defend our interests in the Property against claims made by anyone else. You will keep our claim to the Property ahead of the claim of anyone else. You will not do anything to change our interest in the Property.
- You will keep the Property in your possession and in good condition and repair. You will use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not attempt to sell the Property, transfer any rights in the Property, or grant another lien on the Property without our prior written consent.
- You will pay all taxes and assessments on the Property as they become due.
- You will notify us with reasonable promptness of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. Our entry and inspection must be accomplished lawfully, and without breaching the peace.

**Agreement to Provide Insurance.** You agree to provide property insurance on the Property protecting against loss and physical damage and subject to a maximum deductible amount indicated in the *Insurance Disclosures* section, or as we will otherwise require. You will name us as loss payee on any such policy. Generally, the loss payee is the one to be paid the policy benefits in case of loss or damage to the Property. In the event of loss or damage to the Property, we may require additional security or assurances of payment before we allow insurance proceeds to be used to repair or replace the Property. You agree that if the insurance proceeds do not cover the amounts you still owe us, you will pay the difference. Your choice of insurance provider will not affect the credit decision or interest rate. You will keep the insurance in full force and effect until this Contract is paid in full.

If you fail to obtain or maintain this insurance, or name us as loss payee, we may obtain insurance to protect our interest in the Property. This insurance may be written by a company other than one you would choose. It may be written at a rate higher than a rate you could obtain if you purchased the property insurance required by this Contract. We will add the premium for this insurance to the amount you owe us. Any amount we pay will be due immediately. This amount will earn finance charges from the date paid at the post-maturity rate described in the *Payment* section until paid in full.

**Gap Waiver or Gap Coverage.** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Gap Waiver or Gap Coverage to cover the gap liability, subject to any conditions and exclusions in the Gap Waiver or Gap Coverage agreements.

## Arbitration Provision

**PLEASE READ CAREFULLY! By agreeing to this Arbitration Provision you are giving up your right to go to court for claims and disputes arising from this Contract:**

- **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION, AND NOT BY A COURT OR BY JURY TRIAL.**
- **YOU GIVE UP ANY RIGHT THAT YOU MAY HAVE TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER IN ANY CLASS ACTION OR CLASS ARBITRATION AGAINST US IF A DISPUTE IS ARBITRATED.**
- **IN ARBITRATION, DISCOVERY AND RIGHTS TO APPEAL ARE GENERALLY MORE LIMITED THAN IN A JUDICIAL PROCEEDING, AND OTHER RIGHTS THAT YOU WOULD HAVE IN COURT MAY NOT BE AVAILABLE.**

You or we (including any assignee) may elect to resolve any Claim by neutral, binding arbitration and not by a court action. *"Claim"* means any claim, dispute or controversy between you and us or our employees, agents, successors, assigns or affiliates arising from or relating to: 1. the credit application; 2. the purchase of the Property; 3. the condition of the Property; 4. this Contract; 5. any insurance, maintenance, service or other contracts you purchased in connection with this Contract; or 6. any related transaction, occurrence or relationship. This includes any Claim based on common or constitutional law, contract, tort, statute, regulation or other ground. To the extent allowed by law; the validity, scope and interpretation of this Arbitration Provision are to be decided by neutral, binding arbitration.

If either party elects to resolve a Claim through arbitration, you and we agree that no trial by jury or other judicial proceeding will take place. Instead, the Claim will be arbitrated on an individual basis and not on a class or representative basis.

The party electing arbitration may choose either of the following arbitration organizations and its applicable rules, provided it is willing and able to handle the arbitration: American Arbitration Association, 1633 Broadway, Floor 10, New York, NY 10019 (www.adr.org) or JAMS, 1920 Main Street, Suite 300 Irvine, CA 92614 (www.jamsadr.com), or it may choose any other reputable arbitration organization and its rules to conduct the arbitration, subject to the other party's approval. The parties can get a copy of the organization's rules by contacting it or visiting its website. If the chosen arbitration organization's rules conflict with this Arbitration Provision, the terms of this Arbitration Provision will govern the Claim. However; to address a conflict with the selected arbitration organization's rules, the parties may agree to change the terms of this Arbitration Provision by written amendment signed by the parties. If the parties are not able to find or agree upon an arbitration organization that is willing and able to handle the arbitration, then the arbitrator will be selected pursuant to 9 U.S. Code Sections 5 and 6.

The arbitration hearing will be conducted in the federal district where you reside unless you and we otherwise agree. Or, if you and we agree, the arbitration hearing can be by telephone or other electronic communication. The arbitration filing fee, arbitrator's compensation and other arbitration costs will be paid in the amounts and by the parties according to the rules of the chosen arbitration organization. Some arbitration organizations' rules require us to pay most or all of these amounts. If the rules of the arbitration organization do not specify how fees must be allocated, we will pay the filing fee, arbitrator's compensation, and other arbitration costs up to $5,000, unless the law requires us to pay more. Each party is responsible for the fees of its own attorneys, witnesses, and any related costs, if any, that it incurs to prepare and present its Claim or response. In limited circumstances, the arbitrator may have the authority to award payment of certain arbitration costs or fees to a party, but only if the law and arbitration organization rules allow it.

An arbitrator must be a lawyer with at least ten (10) years of experience and familiar with consumer credit law or a retired state or federal court judge. The arbitration will be by a single arbitrator. In making an award, an arbitrator shall follow governing substantive law and any applicable statute of limitations. The arbitrator will decide any dispute regarding the arbitrability of a Claim. An arbitrator has the authority to order specific performance, compensatory damages, punitive damages, and any other relief allowed by applicable law. An arbitrator's authority to make awards is limited to awards to you or us alone. Claims brought by you against us, or by us against you, may not be joined or consolidated in arbitration with claims brought by or against someone other than you, unless agreed to in writing by all parties. No arbitration award or decision will have any preclusive effect as to issues or claims in any dispute with anyone who is not a named party to the arbitration.

Any arbitration award shall be in writing, shall include a written reasoned opinion, and will be final and binding subject only to any right to appeal under the Federal Arbitration Act ("FAA"), 9 U.S. Code Sections 1, et seq. Any court having jurisdiction can enforce a final arbitration award. You and we agree that this Arbitration Provision is governed by the FAA to the exclusion of any different or inconsistent state or local law.

You or we can do the following without giving up the right to require arbitration: seek remedies in small claims court for Claims within the small claims court's jurisdiction, or seek judicial provisional remedies. If a party does not exercise the right to elect arbitration in connection with any particular Claim, that party still can require arbitration in connection with any other Claim.

This Arbitration Provision survives any (i) termination, payoff, assignment or transfer of this Contract, (ii) any legal proceeding by you or us to collect a debt owed by the other, and (iii) any bankruptcy proceeding in which you or we are the debtor. With but one exception, if any part of this Arbitration Provision is deemed or found to be unenforceable for any reason, the remainder of this Arbitration Provision will remain in full force and effect. The one exception is that if a finding of partial unenforceability would allow arbitration to proceed on a class-wide basis, then this Arbitration Provision will be unenforceable in its entirety.

**PROCESS TO REJECT THIS ARBITRATION PROVISION.** You may reconsider and reject your approval of this Arbitration Provision by sending a written notice to the Assignee (identified in the Assignment section) or if there is no Assignee, then to Seller. The notice must be postmarked within 30 days of the date you signed this Contract. It simply needs to state your decision to reject the Arbitration Provision in this Contract and include your signature. It must also provide your name, Seller's name and the date of this Contract. Rejecting this Arbitration Provision will NOT affect the terms under which we will finance and sell the Property to you or any other terms of this Contract, except that the Arbitration Provision will not apply.

**CAUTION: It is important that you read this Arbitration Provision thoroughly before you sign this Contract. By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision. If you do not understand this Arbitration Provision, do not sign this Contract; instead ask your lawyer. If you approve this Arbitration Provision, you have an additional 30 days after signing to reconsider and reject your approval, as described above. If you use that process to reject this Arbitration Provision will not be a part of this Contract, but the rest of this Contract will still be binding and effective.**

### Notices

Note. If the primary use of the Vehicle is non-consumer, this is not a consumer contract, and the following notice does not apply. **NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

*[This area intentionally left blank.]*

### Third Party Agreement

(This section applies ONLY to a person who will have an ownership interest in the Property but is NOT a Buyer obligated to pay this Contract ("Third Party Owner").)

In this section only, *"you"* means only the person signing this section.

By signing below you agree to give us a security interest in the Property described in the *Description of Property* section. You also agree to the terms of this Contract except that you will not be liable for the payments it requires. Your interest in the Property may be used to satisfy the Buyer's obligation. You agree that we may renew, extend or change this Contract, or release any party or Property without releasing you from this Contract. We may take these steps without notice or demand upon you.

**You acknowledge receipt of a completed copy of this Contract.**

| N/A | 10/13/2018 |
|---|---|
| **By:** | **Date** |
| Signature of Third Party Owner (NOT the Buyer) | |

*[This area intentionally left blank.]*



## Arbitration Provision and Process to Remove

This Contract contains an Arbitration Provision that **affects your rights**. By signing this Contract, you agree that either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. The Arbitration Provision includes a process you can follow in the next 30 days if you reconsider and want to reject the Arbitration Provision.

## Acknowledgment for Electronic Signatures

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intended to enter into this Contract and your electronic signature has the same affect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

## Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

## Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

| | |
|---|---|
| By: Rebecca Ollison | 10/13/2018 Date |
| By: Jerry Davidson | 10/13/2018 Date |
| By: | Date |

**Notice to Buyer.** (1) Do not sign this Contract before you read it or if it contains any blank spaces. (2) You are entitled to a completely filled in copy of this Contract.

By signing below, you agree to the terms of this Contract. You received a copy of this Contract and had a chance to read and review it before you signed it.

**Buyer**

| | |
|---|---|
| By: Rebecca Ollison | 10/13/2018 Date |
| By: Jerry Davidson | 10/13/2018 Date |
| By: | Date |

**Seller** Select Cars of Thornburg

| | |
|---|---|
| By: | 10/13/2018 Date |

**Assignment.** This Contract and Security Agreement is assigned to UNITED AUTO CREDIT
PO BOX 277536 SACRAMENTO CA 95827
the Assignee, phone_____. This assignment is made under the terms of a separate agreement made between the Seller and Assignee.
☐ This Assignment is made with recourse.

Seller  Select Cars of Thornburg

| | |
|---|---|
| By: | 10/13/2018 Date |

*[This area intentionally left blank.]*