Tina Wolfson, SBN 174806
twolfson@ahdootwolfson.com
Christopher E. Stiner, SBN 276033
cstiner@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, CA 90024
Tel: 310-474-9111; Fax: 310-474-8585

Janet R. Varnell, *pro hac vice*
jvarnell@varnellandwarwick.com
VARNELL & WARWICK, P.A.
1101 E. Cumberland Ave., Ste. 201H, #105
Tampa, FL 33602
Tel: (352) 753-8600; Fax: (352) 504-3301

*Counsel for Plaintiff Jerry Davidson, individually and on behalf of all others similarly situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERRY DAVIDSON, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AUTO CREDIT CORPORATION, a California corporation.<br><br>Defendant | Case No. 8:20-cv-00636-DOC-KES<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**<br><br>Hon. David O. Carter<br><br>Date: October 19, 2020<br>Time: 8:30 a.m.<br>Ct. Rm.: 9D<br><br>SAC Filed: July 16, 2020 |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................1

II.   ARGUMENT..............................................................................................2

    A.   Plaintiff's Transaction Is Subject to the MLA Because the Exception Does Not Apply Where the Transaction Includes Items Unrelated to the Financing Itself ................................................................................................3

    B.   United Is A Creditor Under the MLA..............................................8

    C.   The Second Amended Complaint States Claims Pursuant to 10 U.S.C. § 987(c)(1). .........................................................................................9

    D.   The Court Should Not Consider Defendant's Extrinsic Documents ...........11

    E.   The Second Amended Complaint States A Claim Under 10 U.S.C. 987(e) Because the Arbitration "Opt-Out" Provision Is Not Truly Optional..........12

        1.   The plain language of the MLA prohibits the Arbitration Provision. 12

        2.   Governmental agencies and auto industry sources concur that the MLA bans mandatory arbitration provisions regardless of the presence of an opt-out clause.....................................................................................15

        3.   The cases cited by Defendant provide no support for its claim that a mandatory arbitration provision with an opt-out clause is valid under the MLA. ..........................................................................................16

III.  CONCLUSION.........................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arpin v. Santa Clara Valley Transp. Agency*,
261 F.3d 912 (9th Cir. 2001) ........................................................................11

*Burgert v. Lokelani Bernice Pauhi Bishop Trust*,
200 F.3d 661 (9th Cir. 2000) ..........................................................................9

*Christensen v. Harris County*,
529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000) ...................................3

*Deutsche Int'l 1 v. El Trade Int'l Establishment*,
No. CV 03-1663NM(SHSX), 2004 WL 5642432 (C.D. Cal. Jan. 6, 2004) ...................9

*Epstein v. Wash. Energy Co.*,
83 F.3d 1136 (9th Cir. 1996) ......................................................................10

*Forsyth v. City of Buena Park*, No. SACV1401251JVSRNBX,
2014 WL 12847281 (C.D. Cal. Nov. 4, 2014)..............................................14

*Galvan v. Michael Kors USA Holdings, Inc.*,
No. CV1607379BROAFMX, 2017 WL 253985 (C.D. Cal. Jan. 19, 2017) ............16, 17

*Gumataotao v. Director of Dept. of Revenue and Taxation*,
236 F.3d 1077 (9th Cir. 2001) ....................................................................11

*Hanson-Poulsen v. Dep't of Def. of United States*,
 No. CV165786DMGAFMX, 2018 WL 8729581 (C.D. Cal. June 26,2018)...............11

*Hose v. Washington Inventory Servs., Inc.*,
No. 14CV2869-WQH-AGS, 2017 WL 3085846 (S.D. Cal. July 19, 2017).................17

*Hsu v. PumaBiotechnology, Inc.*,
2016 WL 5859000 (C.D. Cal. Sept. 30, 2016) ............................................11

*Lambert v. Ackerley*,
180 F.3d 997 (9th Cir. 1999) .....................................................................14

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

## Cases

*Lee v. City of Los Angeles*,
  250 F.3d 668, 688 (9th Cir. 2001) .................................................................11

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) .......................................................................16

*Rivera v. Uniqlo California*, LLC,
  No. 17-cv-28948 JAK, 2017 WL 6539016 (C.D. Cal. Sept. 8, 2017) ...........17

*Samson v. NAMA Holdings*, LLC,
  637 F.3d 915 (9th Cir. 2011) .........................................................................16

*Union Asset Mgmt. Holding AG v. Sandisk LLC*,
  227 F. Supp. 3d 1098 (N.D. Cal. 2017) ..........................................................11

*United States ex rel. Armfield v. Gills*,
  No. 8:07-CV-2374-T-27TBM, 2011 WL 13151974 (M.D. Fla. Mar. 31,
  2011) ..................................................................................................................3

## Statutes

10 U.S.C. § 987(e)(. .................................................................................... 12,13
10 U.S.C. § 987(f)(4) ........................................................................................16
32 C.F.R. § 232 ..................................................................................................3
32 C.F.R. § 232.3 ...........................................................................................2, 4
32 C.F.R. § 232.4 ...............................................................................................9
32 C.F.R. § 232.8 .............................................................................................14
81 Fed. Reg. 58840 .........................................................................................5, 8
82 Fed. Reg. 239 ................................................................................................7
85 Fed. Reg. 11842 ............................................................................................7
85 Fed. Reg. 11843 ............................................................................................8

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

**Other Authorities**

DEP'T OF DEF., REPORT ON PREDATORY LENDING PRACTICES
  DIRECTED AT MEMBERS OF THE ARMED FORCES AND THEIR
  DEPENDENTS 51 (2006),
  http://archive.defense.gov/pubs/pdfs/Report_to_Congress_final.pdf. ...........................14

Department of Defense Issues Final Military Lending Act Rule,
  https://www.defense.gov/Newsroom/Releases/Release/Article/612795. ......................14

FDIC Consumer Compliance Examination Manual — September 2016 at V-
  13.9, available at
  https://www.fdic.gov/regulations/compliance/manual/5/v-13.1.pdf ............................15

Plaintiff Jerry Davidson ("Plaintiff"), individually and on behalf of the proposed Class, respectfully submits this response in opposition to the Motion to Dismiss Plaintiff's Second Amended Class Action Complaint filed by Defendant United Auto Credit Corporation ("Defendant" or "United").

## I.   INTRODUCTION

The MLA was passed by Congress to protect servicemembers from predatory lending practices that had documented impact on members of the armed forces and our Nation's military readiness. Plaintiff filed this class action on behalf of military borrowers covered by the Military Lending Act, 10 U.S.C. § 987("MLA" or the "Act"), who entered into Defendant's standard Retail Installment Contracts.  Defendant violates the MLA by unlawfully including provisions mandating that military members submit to arbitration, and by failing to provide accurate MLA cost of credit financing disclosures.

Defendant filed its Motion to Dismiss seeking to avoid liability for its illegal conduct and violations of the MLA. Defendant sets forth three arguments in support of its request to dismiss the Second Amended Complaint, none of which warrant dismissal.

First, Defendant contends that the transaction at issue qualifies for an "exception" from the definition of "consumer credit" under the MLA and United is therefore not a "creditor" under the Act.  However, the exception relied upon by Defendant is limited to purchase money loans that finance "only" the motor vehicle itself and not where the transaction includes additional products related to the financing.  Because Plaintiff's loan includes items unrelated to the vehicle, it is a "hybrid" loan and the exception does not apply.

Second, Defendant argues that Plaintiff's claims fail as a matter of law because Plaintiff did not provide a mathematical formula/calculation as to how it determined the MAPR rate of 22.99%.  This argument fails because the inaccuracy of the MAPR, and the prepaid interest charge, are supported by the facts alleged in the Second Amended Complaint and the Installment Contract attached thereto, and factual issues like this may not be determined on a motion to dismiss.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, Case No. 8:20-cv-00636

Finally, Defendant argues that Plaintiff's third claim fails because the arbitration clause in the Installment Contract includes an opt-out provision which, it contends, comports with the MLA. Because the opt-out provision allows Defendant to force Plaintiff to arbitrate, it still violates the MLA.

For these reasons, Defendant's Motion to Dismiss should be denied in its entirety.

## II.    ARGUMENT

Defendant argues that Davidson's complaint must be dismissed because his transaction falls within the MLA exception for transactions financing the purchase of automotive vehicles. However, a thorough review of the applicable regulation that defines "consumer credit" as well as the exceptions and the DoD's interpretation of those exceptions indicates that the exception does not apply this transaction.

The DoD, through the Code of Federal Regulations, defined consumer as "credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that it is (i) subject to a finance charge or (ii) payable by a written agreement in more than four installments." 32 C.F.R. § 232.3. This is the regulation and it has the full force of law. The Guaranteed Asset Protection ("GAP") Coverage which was included in the loan fall within the DoD's definition of consumer credit. Defendant provided Plaintiff with credit for the purchase of GAP Coverage, a Processing Fee and undisclosed prepaid interest that was financed, as evidenced by the standard form Installment Contract. Amd. Compl. at ¶¶ 19, 31, 52, 66, 70, Ex. A. Plaintiff's purchase was made payable by a written agreement with a finance charge and more than four installments. *Id.* (standard form Installment Contract provided for financing for GAP Coverage ($395.00), Processing Fee ($250.00) and undisclosed prepaid interest ($129.61) over 42 payments). Therefore, the Regulation would categorize this transaction as consumer credit unless an exception applies. Applicability of any exception is properly informed by the DoD's Guidance.

Guidance is supplemental material published by an agency that helps to clarify existing rules and is "entitled to respect . . . to the extent that those interpretations have the power to persuade." *United States ex rel. Armfield v. Gills*, No. 8:07-CV-2374-T-27TBM,

2011 WL 13151974, at *6 (M.D. Fla. Mar. 31, 2011).   These can include interagency statements, advisories, bulletins, policy statements, questions and answers and frequently asked questions.  Guidance can be helpful, but it is not binding. *See* JM 1-19.000 ("Agency guidance documents may not be used as a substitute for regulation.").  Although a lender cannot "violate" guidance, it can provide examples of best practices for complying with laws and regulations.  Therefore, all of the guidance published by the DoD is probative, but not binding. *See Christensen v. Harris County,* 529 U.S. 576, 587, 120 S.Ct. 1655, 1662, 146 L.Ed.2d 621 (2000) ("interpretations contained in policy statements, agency manuals, and enforcement guidelines . . . lack the force of the law).

A.   **Plaintiff's Transaction Is Subject to the MLA Because the Exception Does Not Apply Where the Transaction Includes Items Unrelated to the Financing Itself.**

The DoD passed the regulation defining consumer credit under the MLA at 32 C.F.R. § 232 ("MLA Reg") which provides five "Exceptions" to the broad definition of Consumer Credit:

> **(2) *Exceptions.*** Notwithstanding paragraph (f)(1) of this section, consumer credit does not mean:
>
> > **(i)** A residential mortgage, which is any credit transaction secured by an interest in a dwelling, including a transaction to finance the purchase or initial construction of the dwelling, any refinance transaction, home equity loan or line of credit, or reverse mortgage;
> >
> > **(ii)** Any credit transaction that is expressly intended to finance the purchase of a motor vehicle when the credit is secured by the vehicle being purchased;
> >
> > **(iii)** Any credit transaction that is expressly intended to finance the purchase of personal property when the credit is secured by the property being purchased;
> >
> > **(iv)** Any credit transaction that is an exempt transaction for the purposes of Regulation Z (other than a transaction exempt under 12 CFR 1026.29) or otherwise is not subject to disclosure requirements under Regulation Z; and

> **(v)** Any credit transaction or account for credit for which a creditor determines that a consumer is not a covered borrower by using a method and by complying with the recordkeeping requirement set forth in § 232.5(b).

32 C.F.R. § 232.3(f).

Obviously, Defendant relies on the exception language contained in section (ii) which applies to motor vehicles "when the credit is secured by the vehicle being purchased." At first glance, this exclusion language appears to exclude all motor vehicle purchases from the MLA. But this language is not as "cut and dried" as it appears.

First in 2016 and again in 2017, the DoD examined whether the exception applies to transactions which include items other than the property being used to secure the transaction. Importantly, the exception language used for motor vehicles and the exception language used for personal property is virtually identical:

> **(ii)** Any credit transaction that is expressly intended to finance the purchase of a motor vehicle when the credit is secured by the vehicle being purchased;
>
> **(iii)** Any credit transaction that is expressly intended to finance the purchase of personal property when the credit is secured by the property being purchased;

32 C.F.R. § 232.3(f).

Both are intended exceptions exclude "any credit transaction intended to purchase" a thing (ii. motor vehicle or iii. personal property), when the credit is *secured* by the item being purchased. Such transactions are commonly known as purchase money security interests. But what is not clear from this language is what happens when the transaction is intended to purchase goods or services in addition to the motor vehicle or personal property being purchased. As a result, the industry asked the DoD for some clarification.

The DoD's 2016 interpretation of the personal property exemption addressed this issue:

> *2.* Does credit that a creditor extends for the purpose of purchasing personal property, which secures the credit, fall within the exception to ''consumer credit'' under 32 CFR

4

232.3(f)(2)(iii) where the creditor simultaneously extends credit in an amount greater than the purchase price?

*Answer:* No. Section 232.3(f)(1) defines "consumer credit" as credit extended to a covered borrower primarily for personal, family, or household purposes that is subject to a finance charge or payable by written agreement in more than four installments. Section 232.3(f)(2) provides a list of exceptions to paragraph (f)(1), including an exception for any credit transact5ion that is expressly intended to finance the purchase of personal property when the credit is secured by the property being purchased. **A hybrid purchase money and cash advance loan is not expressly intended to finance the purchase of personal property, because the loan provides additional financing that is unrelated to the purchase. To qualify for the purchase money exception from the definition of consumer credit, a loan must finance only the acquisition of personal property.** Any credit transaction that provides purchase money secured financing of personal property along with additional 'cashout' financing is not eligible for the exception under § 232.3(f)(2)(iii) and must comply with the provisions set forth in the MLA regulation.

81 Fed. Reg. 58840 (August 26, 2016) (emphasis added).

The most critical language from this "official interpretation" is that, for the "purchase money exception" to apply, "the loan *must finance* ONLY the acquisition of personal property."  If the loan includes any "additional financing that is unrelated to the purchase" the loan is considered to be a "hybrid" purchase money loan and the MLA exception does not apply.

On December 14, 2017, the DoD issued a second set of interpretations, which reinforced its hybrid loan interpretation.  Importantly, the guideline was issued by the DoD as applicable to BOTH motor vehicle loans and personal property.  Stated in its entirety, the Department's 2017 amended guidance was offered in the form of a Question and answer:

2. Does credit that a creditor extends for the purpose of purchasing a motor vehicle or personal property, which secures the credit, fall within the exception to "consumer credit" under 32 CFR 232.3(f)(2)(ii) or (iii) where the creditor simultaneously extends credit in an amount greater than the purchase price of the motor vehicle or personal property?

5

**Answer:** The answer will depend on what the credit beyond the purchase price of the motor vehicle or personal property is used to finance. Generally, financing costs related to the object securing the credit will not disqualify the transaction from the exceptions, but financing credit-related costs will disqualify the transaction from the exceptions. Section 232.3(f)(1) defines ''consumer credit'' as credit offered or extended to a covered borrower primarily for personal, family, or household purposes that is subject to a finance charge or payable by written agreement in more than four installments. Section 232.3(f)(2) provides a list of exceptions to paragraph (f)(1), including an exception for any credit transaction that is expressly intended to finance the purchase of a motor vehicle when the credit is secured by the vehicle being purchased and an exception for any credit transaction that is expressly intended to finance the purchase of personal property when the credit is secured by the property being purchased. A credit transaction that finances the object itself, as well as any costs expressly related to that object, is covered by the exceptions in § 232.3(f)(2)(ii) and (iii), provided it does not also finance any credit-related product or service. For example, a credit transaction that finances the purchase of a motor vehicle (and is secured by that vehicle), and also finances optional leather seats within that vehicle and an extended warranty for service of that vehicle is eligible for the exception under § 232.3(f)(2)(ii). Moreover, if a covered borrower trades in a motor vehicle with negative equity as part of the purchase of another motor vehicle, and the credit transaction to purchase the second vehicle includes financing to repay the credit on the trade-in vehicle, the entire credit transaction is eligible for the exception under § 232.3(f)(2)(ii) because the trade-in of the first motor vehicle is expressly related to the purchase of the second motor vehicle. Similarly, a credit transaction that finances the purchase of an appliance (and is secured by that appliance), and also finances the delivery and installation of that appliance, is eligible for the exception under § 232.3(f)(2)(iii). In contrast, a credit transaction that also finances a credit-related product or service rather than a product or service expressly related to the motor vehicle or personal property is not eligible for the exceptions under § 232.3(f)(2)(ii) and (iii). For example, a credit transaction that includes financing

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, Case No. 8:20-cv-00636

1
2
3
4
5
6
7
8

for Guaranteed Auto Protection insurance or a credit insurance premium would not qualify for the exception under § 232.3(f)(2)(ii) or (iii). Similarly, a hybrid purchase money and cash advance credit transaction is not expressly intended to finance the purchase of a motor vehicle or personal property because the credit transaction provides additional financing that is unrelated to the purchase. Therefore, any credit transaction that provides purchase money secured financing of a motor vehicle or personal property along with additional ''cashout'' financing is not eligible for the exceptions under § 232.3(f)(2)(ii) and (iii) and must comply with the provisions set forth in the MLA regulation.

9    82 Fed. Reg. 239, at 58740 (Dec. 14, 2017).

10         This interpretation is important to this Court's analysis for two general reasons.
11    First, it shows that the DoD interprets the purchase money exceptions to the MLA for motor
12    vehicles and personal property together.  In other words, there is nothing from the DoD
13    that would justify having one rule for personal property and an inconsistent different rule
14    for motor vehicles.

15         Second, the interpretation clarified what it called a "hybrid" purchase money loan in
16    2016, as financing any product or service other than the personal property or motor vehicle
17    itself does not qualify the loan for the limited exception.  For example, like the "cash out"
18    example used in the 2016 interpretation, the 2017 interpretation used "Guaranteed Asset
19    Protection" as one of many products that void the exception because the loan was not
20    strictly limited to the item subject to the purchase money loan.

21         Admittedly, on February 28, 2020, the DoD withdrew this interpretation.  However,
22    this action is not as important to this Court's analysis as Defendant makes it out to be.  As
23    the DoD stated: "In withdrawing this amended question and answer, the Department is
24    reverting back to the original Q&A #2 published in the August 26, 2106 Interpretive Rule."
25    85 Fed. Reg. 11842 (February 28, 2020). The DoD also clarified that it was not changing
26    its interpretation but merely withdrew the 2017 Q&A #2 for further review and "absent of
27    additional analysis, **takes no position** on any of the arguments or assertions advanced as a

28

1   basis for withdrawing the amended Q&A #2." 85 Fed. Reg. 11843 (February 28,

2   2020)(emphasis added).

3       Accordingly, this Court should ultimately reach the same conclusion that the DoD

4   stated in 2017 because the Regulation itself has not changed and the DoD's 2016 guidance

5   involving hybrid transactions still controls:

6       A hybrid purchase money and cash advance loan is not expressly
        intended to finance the purchase of personal property, because
7       the loan provides additional financing that is unrelated to the
        purchase. To qualify for the purchase money exception from the
8       definition of consumer credit, a loan must finance only the
        acquisition of personal property.
9

10  81 Fed. Reg. 58840.

11      Applying this rule to motor vehicles: A purchase money loan that provides financing

12  for anything that is "unrelated to" the motor vehicle itself, is a hybrid loan and the purchase

13  money exception does not apply.  Because Plaintiff's loan includes items unrelated to the

14  motor vehicle, the loan is a hybrid loan and the purchase money exception does not apply.

15  Specifically, Plaintiff's loan included three identifiable credit-related charges that were not

16  related to the motor vehicle itself:  GAP Coverage, a Processing Fee, and Prepaid Interest.

17  Amd. Compl. at Ex. A.  As a result, the loan did not finance "only" the motor vehicle and

18  thus, the MLA exception is inapplicable. Defendant provides no argument nor legal basis

19  to support applying a different legal standard for purchase money loans for motor vehicles

20  as compared to the clear standard already determined for personal property. Therefore, the

21  Installment Contract, which includes credit-related services in addition to the automobile

22  loan, meets the definition of "consumer credit" under the MLA.

23  **B.   United Is A Creditor Under the MLA.**

24      Next, Defendant asserts that it is not a "creditor" under the MLA because United

25  does not extend consumer credit because both it and the dealerships that originate the loans

26  "engage only in the sale of automobiles, and nothing more." MTD at 7.  In effect,

27  Defendant is arguing that it does not finance products or services beyond the vehicles

28  themselves.  However, the Installment Contract contradicts this assertion on its face:

8

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, Case No. 8:20-cv-00636

Plaintiff's loan included "GAP Coverage" which was financed along with the purchase price of the vehicle, among other items.  The assignment to Defendant was simultaneous with the execution of the Retail Installment Sales Contract as is the allegations of the Complaint make clear.

### C.   The Second Amended Complaint States Claims Pursuant to 10 U.S.C. § 987(c)(1).

Defendant also argues that the Second Amended Complaint must be dismissed because the allegations are conclusory and lack any factual basis for the calculation of the prepaid interest or the difference in the MAPR rate.  MTD at 11.  Contrary to Defendant's assertions, the terms of the Installment Contract itself, and which is attached to the Complaint, clearly support the allegations in the Second Amended Complaint which is all that is required at this stage of the proceedings. Defendant seeks to require Plaintiff to plead with a level of particularity as to its calculations that is not required for an MLA claim.

Plaintiff adequately alleges that the disclosed MAPR of 22.99% did not include the required costs in its credit disclosures as required by 32 C.F.R. § 232.4, which violates the MLA on its face. Amd. Compl. at ¶¶ 56, 69.  Any specific calculation is not required to defeat a motion to dismiss as this Court must "take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party." *Burgert v. Lokelani Bernice Pauhi Bishop Trust,* 200 F.3d 661, 663 (9th Cir. 2000). This suffices to defeat a motion to dismiss. *See Deutsche Int'l 1 v. El Trade Int'l Establishment*, No. CV 03-1663NM(SHSX), 2004 WL 5642432, at *4 (C.D. Cal. Jan. 6, 2004) ("The court will examine whether conclusory allegations follow from the description of facts alleged by the plaintiff."). Even without a specifically enumerated calculation in the complaint, the allegation that Defendant charged Plaintiff an undisclosed MAPR rate of 26.31% is clearly extracted from the numbers set forth in the contract. Amd. Compl. Ex. A at 1 (calculation includes the total amount financed, total payments, number of payments, and the corrected MAPR rate). These facts support Plaintiff's allegations that he was charged an improper

MAPR rate of 26.31%, which is higher than the 22.99% disclosed by Defendant. Nothing more is required at this stage.

Defendant erroneously relies on *Epstein v. Wash. Energy Co*., 83 F.3d 1136, 1140 (9th Cir. 1996) for the proposition that the allegations in Counts I and II are conclusory because they fail to allege facts.  MTD at 11.  *Epstein* is inapplicable to the instant action as *Epstein* involved a motion to dismiss in the context of alleged securities fraud claims, not the MLA. Plaintiffs alleged that defendant failed to make certain disclosures. 83 F.3d at 1142. The court granted defendant's motion to dismiss, finding that, as a matter of law, the failure to make the disclosures as alleged in the complaint did not violate applicable securities laws and did not provide any basis for relief.  *Id*. Unlike the legally erroneous and conclusory allegations under attack in *Epstein,* the allegations here are sufficient because Defendant's 22.99% MAPR rate was inaccurate and such allegations are based upon facts alleged in the Second Amended Complaint and the terms within the Installment Contract.

Defendant also argues that Plaintiff's allegation that he was charged $129.61 in prepaid interest has no factual support or explanation and is contravened by the terms of the Installment Contract.  MTD at 12-14.  However, this is a factual dispute and thus, this argument is not a proper ground for dismissal.  The Second Amended Complaint properly alleges that Defendant's disclosures were inaccurate and alleges specific factual problems with Defendant's disclosures.  Among other things, Defendant was charged prepaid interest despite the Installment Contract stating that the transaction included no prepaid interest. Amd. Compl. at ¶¶ 31, 70, Ex. A.  Plaintiff is not required to set forth the complex calculation and regulatory definitions of each charge in his complaint as suggested by Defendant.  Plaintiff sets forth one of the specific manners in which the transaction is alleged to violate a law or regulation.  Defendant argues that the amount of its disclosure was not inaccurate. This is precisely the type of factual dispute that must be resolved in litigation and not through a motion to dismiss.  *See Hanson-Poulsen v. Dep't of Def. of*

1  *United States,* No. CV165786DMGAFMX, 2018 WL 8729581, at *8 (C.D. Cal. June 26,
2  2018) (questions of fact are "inappropriate for decision on a motion to dismiss").

3  **D.  The Court Should Not Consider Defendant's Extrinsic Documents**

4  Defendant also seeks to have this Court improperly "take judicial notice" of United's
5  proffered amortization schedule. It is improper for Defendant to request this Court to
6  consider the amortization schedule document at this stage of the proceedings and,
7  regardless, the amortization schedule does not prove what Defendant purports it does. *See*
8  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (typically, "a district court
9  may not consider any material beyond the pleadings in ruling on Rule 12(b)(6) motion.")
10 *overruled on other grounds* ; *Gumataotao v. Director of Dept. of Revenue and Taxation*,
11 236 F.3d 1077, 1082–83 (9th Cir. 2001) (holding that the district court was not required to
12 consider evidence outside of the pleadings when ruling on a motion to dismiss); *Arpin v.*
13 *Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001) ("[E]xtraneous
14 evidence should not be considered in ruling on a motion to dismiss."). Judicial notice is an
15 explicitly limited doctrine that allows a court to consider "a fact that is not subject to
16 reasonable dispute because it: (1) is generally known within the trial court's territorial
17 jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy
18 cannot reasonably be questioned." *Hsu v. PumaBiotechnology, Inc.*, 2016 WL 5859000, at
19 *3 (C.D. Cal. Sept. 30, 2016) (quoting Fed. R. Evid. 201).  FRE 201 allows courts to take
20 judicial notice of "a fact," not a document, that is not subject to reasonable dispute.
21 *Id.*  Here, the amortization schedule does not fit within the judicial notice requirements as
22 it is being used to prove a disputed fact which is not permitted. *See Union Asset Mgmt.*
23 *Holding AG v. Sandisk LLC*, 227 F. Supp. 3d 1098, 1100 (N.D. Cal. 2017) ("[T]he
24 defendants are introducing extrinsic material in an effort to sow doubt at a stage when the
25 plaintiffs' factual allegations are presumed true. That is not appropriate."). Clearly, whether
26 the correct MAPR rate was used is a disputed factual issue and Defendant should not be
27 permitted to rely on any extrinsic documents in connection with its motion to dismiss for
28 this purpose.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**E.     The Second Amended Complaint States A Claim Under 10 U.S.C. 987(e) Because the Arbitration "Opt-Out" Provision Is Not Truly Optional.**

Under the MLA, it is unlawful for a creditor to extend consumer credit to a person covered by the Act "with respect to which … the creditor requires the borrower to submit to arbitration or imposes onerous legal notice provisions in case of a dispute."  To obtain credit from Defendant, Plaintiff was required to sign Defendant's standard Installment Contract, which included an Arbitration Provision providing that either Plaintiff or Defendant (as assignee) "may elect to resolve any claim by … arbitration and not by a court action." Amd. Compl., Ex. A.  at 4. This provision clearly violates the plain language of the MLA by purporting to force covered borrowers to arbitrate disputes with Defendant if Defendant "elects" (i.e., dictates) arbitration at the time a dispute arises.

Defendant, however, claims to have found a loophole in the Act's prohibition of forced arbitration. Defendant contends that, by requiring the borrower to agree to the Arbitration Provision in order to obtain credit, but then allowing the borrower to "reconsider and reject your approval of this Arbitration Provision" by sending a written notice of rejection within 30 days after signing the Agreement, the Contract was not "requiring" the borrower to agree to arbitration but merely "gave Plaintiff the option of agreeing to mandatory arbitration" and, thus, did not violate the Act. Defendant is wrong; its proffered "loophole theory" distorts the plain language of both the Act and the Contract, undermines the purpose of the Act, and contradicts the interpretations of numerous governmental agencies and auto industry sources that have recognized the comprehensive nature of the Act's ban on forced arbitration.

**1.   The plain language of the MLA prohibits Arbitration.**

Multiple sections of the MLA clearly evidence Congressional intent to impose a blanket prohibition against forcing an unwilling borrower into arbitration. First, § 987(e)(3) prohibits installment contracts that "require[] the borrower to submit to arbitration or imposes onerous legal notice provisions *in case of a dispute*." (emphasis added).  This is precisely what the Contract does. Plaintiff Davidson and all other borrowers, including

those covered under the MLA, were required to agree to arbitration when they signed the Contract, which explicitly states:

> By signing this Contract, *you agree* that either of us may request and require the other to resolve disputes or claims through arbitration instead of a lawsuit. The Arbitration Provision includes a process you can follow in the next 30 days if you reconsider and want to reject the Arbitration Provision.

Amd. Compl., Ex. A.  at 6 (emphasis added). See also Amd. Compl., Ex. A.  at 4 ("By signing this Contract, you acknowledge that you read, understand and agree to this Arbitration Provision."). Consequently, if the Contract is valid, Defendant now holds the power to require Plaintiff Davidson to arbitrate any covered dispute. That Mr. Davidson had a limited opportunity to reject the Arbitration Provision after signing does not alter the fact that he was required to agree to the Provision, or that, under the Contract, Defendant holds the power to impose arbitration on Plaintiff against his wishes.

Contrary to Defendant's claim, the plain language of § 987(e)(3) leaves no room for loopholes enabling lenders to entrap borrowers in mandatory arbitration agreements with post-signing opt-out clauses. But even if it did, Section § 987(f)(4) provides conclusive evidence that MLA's prohibition against forcing covered borrowers into arbitration is total and complete. That section provides:

> Notwithstanding [the Federal Arbitration Act], or any other Federal or State law, rule, or regulation, *no agreement to arbitrate any dispute involving the extension of consumer credit* shall be enforceable against any covered member or dependent of such a member, or any person who was a covered member or dependent of that member when the agreement was made.

*Id.* (emphasis added). The language could not be clearer. *Any* arbitration provision that would apply to borrowers covered by the MLA is prohibited and unenforceable. A time-limited escape clause does not render Defendant's Arbitration Provision permissible under the MLA.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, Case No. 8:20-cv-00636

Regulations issued by the Department of Defense under the MLA further confirm the comprehensiveness of the statute's ban of forced arbitration. Under the regulations, it is unlawful to extend consumer credit to an armed forces member covered by the MLA if the borrower is required to waive the "right to legal recourse under any otherwise applicable provision of State or Federal law." 32 C.F.R. § 232.8. The Defendant Arbitration Provision requires borrowers to waive the right to pursue their legal claims in a court of law, thus violating the Regulation.

Defendant's assertion that the Arbitration Provision is "anything but mandatory" is a cynical misreading of the plain language of the Contract. Any borrower who does not "reconsider and reject" the Arbitration Provision by following the prescribed procedure within 30 days after signing the Contract is indisputably subject to mandatory arbitration throughout the entire term of the Contract and beyond. *See id*. at 6.

Moreover, Defendant's proffered interpretation of the MLA runs directly counter to the remedial purpose of the statute, *i.e.*, to provide specific protections for active duty service members and their dependents against certain predatory lending practices, including mandatory arbitration clauses.[1]  Remedial statutes, such as the MLA, "must be interpreted broadly and not applied in a "narrow, grudging manner." *Forsyth v. City of Buena Park*, No. SACV1401251JVSRNBX, 2014 WL 12847281, at *6 (C.D. Cal. Nov. 4, 2014), *quoting Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir. 1999). The remedial intent of the MLA demands that Defendant's attempt to subject covered borrowers to mandatory arbitration be rejected.

---

[1]  *See* Department of Defense Issues Final Military Lending Act Rule, https://www.defense.gov/Newsroom/Releases/Release/Article/612795. The Department of Defense report that led to passage of the MLA included the following recommendation: "Service members should maintain full legal recourse against unscrupulous lenders. Loan contracts to Service members should not include man-datory arbitration clauses or onerous notice provisions, and should not require the Service member to waive his or her right of recourse, such as the right to participate in a plaintiff class. Waiver is not a matter of choice in take-it-or-leave-it contracts of adhesion." DEP'T OF DEF., REPORT ON PREDATORY LENDING PRACTICES DIRECTED AT MEMBERS OF THE ARMED FORCES AND THEIR DEPENDENTS 51 (2006), http://archive.defense.gov/pubs/pdfs/Report_to_Congress_final.pdf. *See also* https://www.nytimes.com/2015/03/17/business/wronged-troops-are-denied-recourse-by-arbitration-clauses.html (detailing harms of mandatory arbitration to service members).

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, Case No. 8:20-cv-00636

**2. Governmental agencies and auto industry sources concur that the MLA bans mandatory arbitration provisions regardless of the presence of an opt-out clause.**

In keeping with the remedial purpose of the MLA, numerous government agencies with responsibility for supervising lenders advised that a credit agreement with a borrower covered by the MLA could include a mandatory arbitration provision only if the agreement also included a "savings clause" exempting covered borrowers from the provision. For example, the FDIC advises:

> A creditor may include a proscribed term under [MLA regulations], such as a mandatory arbitration clause, within a standard written credit agreement with a covered borrower, provided that the agreement includes a contractual "savings" clause limiting the application of the proscribed term to only non-covered borrowers, consistent with any other applicable law.

FDIC Consumer Compliance Examination Manual — September 2016 at V-13.9, available at https://www.fdic.gov/regulations/compliance/manual/5/v-13.1.pdf (last visited August 30, 2020).[2] The Contract includes no such savings clause.

Likewise, even auto industry sources prone to interpret the MLA in the manner most favorable to lenders (such as Defendant) interpret the statute as imposing a complete ban on mandatory arbitration clauses in contracts with covered borrowers. Automotive News advised sellers that, under the MLA, "all retail installment contracts and consumer-protection product contracts must be updated to remove arbitration provisions or disclose that an arbitration clause is not applicable to borrowers covered under the act."[3] Dealer Marketing Magazine told its subscribers that, to comply with the MLA, "all retail installment contracts and consumer protection product contracts need to be updated to

---

[2] *See also* Federal Reserve Consumer Compliance Handbook, Special Provisions for Servicemembers at 9, *available at* https://www.federalreserve.gov/boarddocs/supmanual/cch/mla.pdf (last visited August 31, 2020) (same); Office of Controller of the Currency, Consumer Compliance, Military Lending Act at 18, *available at* https://occ.gov/publications-and-resources/publications/comptrollers-handbook/files/military-lending-act/index-military-lending-act.html (last visited August 30, 2020) (same).

[3] https://www.autonews.com/article/20180110/FINANCE_AND_INSURANCE/180119982/murky-military-lending-act-requirements-leave-industry-scrambling.

---

15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, Case No. 8:20-cv-00636

either remove arbitration provisions, or make them not applicable for borrowers covered under the [MLA]."[4] Defendant can point to not a single court, government agency, or auto industry source that endorses Defendant's distorted reading of the MLA.

### 3. The cases cited by Defendant provide no support for its claim that a mandatory arbitration provision with an opt-out clause is valid under the MLA.

Every case cited in Defendant's motion involves a contract signatory opposing a motion to compel arbitration under the Federal Arbitration Act on the ground that the arbitration provision was unconscionable. These cases are wholly inapposite for several reasons.

First, while Defendant asserts that the cited cases establish that the opt-out clause in the Contract provided Plaintiff with a "meaningful opportunity" to reject the Arbitration Provision after he was required to agree to it , the MLA itself clearly indicates that there is *no way* an opt-out clause would make a mandatory arbitration provision enforceable. *See* MLA Section § 987(f)(4).

Second, the MLA and FAA embody fundamentally opposing policies regarding arbitration: the MLA is a remedial statute intended to protect service members against mandatory arbitration provisions, while the FAA reflects a "clear policy favoring arbitration," *Galvan v. Michael Kors USA Holdings, Inc.*, No. CV1607379BROAFMX, 2017 WL 253985, at *3 (C.D. Cal. Jan. 19, 2017), and "calls on courts to rigorously enforce agreements to arbitrate. " *Samson v. NAMA Holdings*, LLC, 637 F.3d 915, 923 (9th Cir. 2011). Indeed, the MLA explicitly states that its protections "notwithstanding" the provisions of the FAA. MLA § 987(f)(4). Thus, the MLA's prohibition of mandatory arbitration is to be interpreted broadly to protect covered borrowers. In direct contrast, a party not covered by the MLA "bears the burden of proving … unconscionability" of an arbitration clause. *Poublon v. C.H. Robinson Co*., 846 F.3d 1251, 1260 (9th Cir. 2017). For these reasons, the cases cited by Defendant are not just irrelevant, but their reasoning

---

[4] https://www.dealermarketing.com/how-military-lending-act-rule-changes-will-affect-dealers/.

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, Case No. 8:20-cv-00636

regarding the validity of arbitration clauses is affirmatively misleading in the context of the MLA as none of the statutes at issue contained a similar prohibition.

Finally, even if the Court were to find that an arbitration provision that includes a meaningful post-agreement opportunity to opt out might be permissible under the MLA, the cited cases do not support Defendant's claim that its contract provides such a meaningful opportunity. For example, in *Rivera v. Uniqlo California*, LLC, No. 17-cv-28948 JAK, 2017 WL 6539016 (C.D. Cal. Sept. 8, 2017), the court noted that the opt-out provision was "not hidden in the Arbitration Agreement" but, rather, was disclosed in the same paragraph the included the signatory's agreement to arbitrate ("Subject to EMPLOYEE's right to opt of the Agreement in Section 15 below, EMPLOYEE accepts this Agreement …"). Additionally, the opt-out was disclosed in just above the signature line, and it was "the only paragraph of the agreement to be prefaced with a heading in all capital letters." *Id.* at *7. In contrast, the opt-out provision in the Contract is not revealed to the borrower until the tenth paragraph of the Arbitration Provision, after nine dense paragraphs containing more than 1,000 words describing mandatory arbitration. ECF 31, Exh. A at 4-5.  The words "Process to Reject This Arbitration Provision" at the start of the tenth paragraph, while bolded, are far smaller than first fourteen lines of the Arbitration Provision, which emphasize the mandatory nature of the Provision with no mention of any ability to opt-out.

In *Hose v. Washington Inventory Servs., Inc*., No. 14CV2869-WQH-AGS, 2017 WL 3085846, at *2 (S.D. Cal. July 19, 2017), the opt-out clause allowed employees to fill out and submit an opt-out form from the Intranet, or to submit an opt-out form prepared by the employee. In *Galvan v. Michael Kors USA Holdings, Inc*. No. 16-cv-7379, 2017 WL 253985 (C.D. Cal. Jan. 19, 2017), the contract allowed signatories to opt out of arbitration by clicking on an email link. Neither case required signatories to send a written notice through the mail, as in the Contract. Nevertheless, with the email link, and even under the extremely permissive standards under the FAA, the *Galvan* court found the arbitration provision at issue to be "marginally procedurally unconscionable." *Id*. at *6.

Thus, even if a "meaningful opportunity" to opt out could save a mandatory arbitration clause under the MLA (and it cannot), it is far from clear that the Contract afforded Plaintiff a "meaningful opportunity" to opt out of the Arbitration Provision. At a minimum, there would be an issue of fact regarding the adequacy of Defendant's opt-out provision, an issue not susceptible to resolution on a motion to dismiss.

Accordingly, the arbitration provision is truly not an opt-out and is therefore in violation of the express terms of the MLA.

## IV.   CONCLUSION

Based on the foregoing, Plaintiff Jerry Davidson respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**AHDOOT & WOLFSON, PC**

Dated:  September 8, 2020

*/s/ Tina Wolfson*
Tina Wolfson
Christopher E. Stiner
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: 310-474-9111
Fax: 310-474-8585
twolfson@ahdootwolfson.com

**VARNELL & WARWICK, P.A.**
Janet R. Varnell, *pro hac vice*
1101 E. Cumberland Ave.
Suite 201H, #105
Tampa, Florida 33602
Tel: 352-753-8600
Fax: 352-504-3301
jvarnell@varnellandwarwick.com

*Counsel for Plaintiff Jerry Davidson,
individually and on behalf of all others
similarly situated*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 8, 2020, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

*/s/ Tina Wolfson*
Tina Wolfson