HOLLAND & KNIGHT LLP
Abraham J. Colman (SBN 146933)
abe.colman@hklaw.com
Raymond Y. Kim (SBN 251210)
raymond.kim@hklaw.com
Zachary Frampton (SBN 303225)
zac.frampton@hklaw.com
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Telephone:    213.896.2400
Fax:          213.896.2450

*Attorneys for Defendant*
United Auto Credit Corporation

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

JERRY DAVIDSON, individually and
on behalf of all others similarly situated,

                Plaintiff,

     vs.

UNITED AUTO CREDIT
CORPORATION, a California
corporation,

                Defendant.

Case No.: 8:20-cv-00636-MCS (KESx)

**DEFENDANT UNITED AUTO CREDIT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)**

Hon. Mark C. Scarsi[1]
Hon. Karen L. Stevenson

Date:        October 19, 2020
Time:        9:00 a.m.
Ct. Rm.:     7C

SAC Filed: July 16, 2020

---

[1] Pursuant to the September 30, 2020 Order of the Chief Judge, this matter was transferred from Judge David O. Carter to the calendar of Judge Mark C. Scarsi for all further proceedings. *See* Dkt. No. 41. In the afternoon of October 5, 2020, United Auto reviewed Judge Scarsi's Standing Order (dated October 1, 2020), which limits reply briefs to ten (10) pages. United Auto did not notice this Order prior to October 5, and prepared its reply brief in advance pursuant to Judge David Carter's Standing Order, which does not limit a reply brief's number of pages. As such, United Auto respectfully requests that the Court permit United Auto to submit a reply brief in excess of 10 pages and consider United Auto's submitted reply brief in its entirety.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ..................................................................................1

II.   LEGAL ARGUMENT ..........................................................................2

    A.   The MLA Expressly Exempts Auto Finance Transactions, Such As Plaintiff's Auto Finance Contract.......................................................2

        1.   The Plain Language Of The MLA Should Control ....................2

        2.   The DoD's Interpretation Of 32 C.F.R. 232.3(f)(2)(iii), A Separate Regulatory Exception Governing The Finance of Personal Property Purchases, Has No Bearing Here.............5

        3.   United Auto Is Not A "Creditor" Under The MLA...................8

    B.   Plaintiff's First And Second Claims Under 10 U.S.C. § 987(c)(1) Fail As A Matter of Law.......................................................9

    C.   Plaintiff Does Not Dispute That "Prepaid Interest" Is Not Applied To Closed-Ended, Simple Interest Contracts, Like Plaintiff's Installment Contract........................................................12

    D.   The Court May Take Judicial Notice Of Mathematical Calculations Contained In The Amortization Table, Attached As Exhibit 1 To United Auto's Request For Judicial Notice..................13

    E.   Plaintiff's Third Claim Under 10 U.S.C. § 987(e)(3) for Mandatory Arbitration Fails As A Matter of Law ...........................14

        1.   The MLA Does Not Prohibit Arbitration As A Blanket Rule—It Only Prohibits Arbitration When It Is A Condition Of Obtaining Consumer Credit...............................14

        2.   The Opt-Out Clause Renders The Arbitration Provision Optional, And Therefore Not In Violation Of The MLA.........15

        3.   Cases In The Ninth Circuit Provide That When An Arbitration Provision Includes A Meaningful Opt-Out Clause, The Arbitration Provision Is Optional Rather Than Mandatory.......................................................................16

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

DEFENDANT UNITED AUTO CREDIT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

1

III.    CONCLUSION ............................................................................18

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS
ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*16062 Sw. Freeway, LLC v. Principal Commercial Funding, LLC*,
No. 07-CV-1998, 2008 WL 11508654 (S.D. Cal. Feb. 5, 2008) ........................... 10

*Adams v. Johnson*,
355 F.3d 1179 (9th Cir. 2004) ....................................................................... 10

*Alanis v. Nelson*,
No. CV 11-02583-JEM, 2011 WL 13130698 (C.D. Cal. Oct. 3, 2011) ............... 10

*Allied World Surplus Lines Ins. Co. v. Hawaii Med. Serv. Ass'n*,
No. CV 17-00156, 2017 WL 4286306 (D. Haw. Sept. 27, 2017) .......................... 10

*Connecticut Nat'l Bank v. Germain*,
503 U.S. 249 (1992) ....................................................................................... 3

*Daniels-Hall v. Nat'l Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ................................................................... 11, 12

*Forouzesh v. CVS Pharmacy, Inc*.,
No. 2:18-cv-04090, 2019 WL 652887 (C.D. Cal., Feb. 15, 2019) ..................... 12

*Garrett v. Monterey Financial Services, LLC*,
No. 18-cv-325 JKB, 2018 WL 3579856 (D. Md. July 25, 2018) .............. 15, 16, 17

*Gipbsin v. Runnels*,
No. CIV S-03-1547, 2006 WL 3299883 (E.D. Cal. Nov. 14, 2006),
*report and recommendation adopted sub nom*., 2007 WL 776607
(E.D. Cal. Mar. 12, 2007) ............................................................................. 10

*Hanson-Poulsen v. Dep't of Def. of United States*,
No. CV165786DMGAFMX, 2018 WL 8729581 (C.D. Cal. June 26,
2018) .......................................................................................................... 10

*Hose v. Washington Inventory Servs, Inc*.,
No. 14-cv-2869, 2017 WL 3085846 (S.D. Cal. July 19, 2017) ........................... 16

*Miller v. Fed. Land Bank of Spokane*,
587 F.2d 415 (9th Cir. 1978) ......................................................................... 13

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- iii -

*Moss v. U.S. Secret Service*,
    572 F.3d 962 (9th Cir. 2009) ................................................................ 10

*In re Netflix, Inc. Sec. Litig.*,
    No. C 04-2978 WHA, 2005 WL 3096209 (N.D. Cal. Nov. 18, 2005) ............... 13

*Oklahoma Firefighters Pension & Retirement Sys. v. Ixia*,
    No. 13-cv-8440 MMM, 2015 WL 1775221 (C.D. Cal. April 14, 2015) ............. 13

*Reno v. National Transp. Safety Bd.*,
    45 F.3d 1375 (9th Cir.1995) ..................................................................... 3

*Rivera v. Uniqlo California, LLC*,
    No. LACV1702848JAKJPRX, 2017 WL 6539016 (C.D. Cal. Sept. 8,
    2017) ................................................................................................... 18

*Sprewell v. Golden State Warriors*,
    266 F.3d 979 (9th Cir. 2001) ................................................................. 10

*United States v. Bucher*,
    375 F.3d 929 (9th Cir. 2004) ................................................................... 3

*United States v. Hagberg*,
    207 F.3d 569 (9th Cir. 2000) ................................................................... 3

*Zuress v. Donley*,
    606 F.3d 1249 (9th Cir. 2010) ................................................................. 2

**Statutes**

10 U.S.C. § 987(i)(6) .................................................................................. 3

10 U.S.C. § 987(c)(1) .................................................................................. 9

10 U.S.C. § 987(e)(3) ................................................................................ 14

**Other Authorities**

12 C.F.R. § 1026.17(c)(4)(ii) ...................................................................... 12

32 C.F.R. 232.3(f)(1) .................................................................................. 8

32 C.F.R. 232.3(f)(2)(ii) ........................................................................... 3, 6

32 C.F.R. 232.3(f)(2)(iii) .......................................................................... 2, 5

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS
ACTION COMPLAINT

32 C.F.R. 232.3(f)(2)(iii) ............................................................................... 5, 6

32 C.F.R. § 232.3(i) ...................................................................................... 8

32 C.F.R. § 232.3(b)(1) ................................................................................. 4

32 C.F.R. § 232.3(b)(2)(ii) (Sept. 30, 2015) ................................................. 4

32 C.F.R. §232.3(f)(1) .................................................................................. 3

32 C.F.R. § 232.4(c)(2) ............................................................................... 12

32 CFR 232.3(f)(2)(iii) ................................................................................. 5

82 Fed. Reg. 58739 (Dec. 14, 2017) ............................................................ 6

2014 DoD Proposed Rules, 79 Fed. Reg. 58602-01 ..................................... 5

2016 DoD Ruling, 81 Fed. Reg. 58840-01 (August 26, 2016) ................. 5, 6

2020 DoD Ruling, 85 Fed. Reg. 11842-02 ................................................ 7, 8

2020 DoD Ruling, 85 Fed. Reg. 11843 (Feb. 28, 2020) ............................... 7

DoD, Proposed Rules, Limitations on Terms of Consumer Credit
    Extended to Service Members and Dependents,
    79 FR 58602-01, 58603 (September 29, 2014) ....................................... 4

FDIC Consumer Compliance Examination Manual, MLA, V-13.1 (Sept.
    2016) (available at
    https://www.fdic.gov/regulations/compliance/manual/5/v-13.1.pdf) ...... 8

OPTION, Black's Law Dictionary (11th ed. 2019) ...................................... 15

OPTIONAL, Oxford English Dictionary, US English ................................. 15

*Texas Independent Automobile Dealers Association*, Mind the Gap…
    Insurance (November 20, 2019) (*available at*
    https://www.txiada.org/blog_home.asp?display=244) ............................. 7

*Washington Area New Dealers Association*, New DOD Interpretation of
    Military Lending Act Affects Dealers (*available at*
    https://wanada.org/new-dod-interpretation-of-military-lending-act-
    affects-dealers/) ....................................................................................... 7

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- v -

# I.    **INTRODUCTION**

The Opposition filed by Plaintiff Jerry Davidson ("Plaintiff") confirms that the Military Lending Act (the "MLA") does not govern the transaction financing his vehicle purchase in 2018.  Plaintiff's auto finance contract (the "Contract") with Defendant United Auto Credit Corporation ("United Auto") was secured by the vehicle.  The MLA *expressly exempts* "any credit transaction that is expressly intended to finance the purchase of a motor vehicle when the credit is secured by the vehicle being purchased."  Plaintiff's attempt to equate his auto finance transaction with a "hybrid purchase money and cash advance loan" for personal property fails.  Plaintiff does not allege that United Auto provided him a cash advance loan exceeding the costs associated with his vehicle purchase.  Moreover, the MLA's auto finance exemption is distinct from, and independent of, the personal property exemption.  And unlike the personal property exemption, the Department of Defense has not limited the auto finance exemption in any manner.  Accordingly, Plaintiff's claims, all of which are grounded in the MLA, should be dismissed as a matter of law.

Plaintiff's first and second claims should also be dismissed for an independent reason:  they lack any supporting facts to state a plausible claim that the MAPR is not accurate, and are belied by the amounts set forth in the Contract.  In its opening brief, United Auto set forth a specific calculation and amortization table showing that the 22.99% MAPR in the Contract is accurate, and Plaintiff was not assessed a "Prepaid Interest."  Plaintiff does not dispute United Auto's calculation, fails to address United Auto's detailed arguments, and merely contends that "[e]ven without a specifically enumerated calculation in the complaint, the allegation that Defendant charged Plaintiff an undisclosed MAPR rate of 26.31% is clearly extracted from the numbers set forth in the contract."  To the contrary, the purported MAPR of 26.31 is not "clearly extracted from the numbers set forth in the contract."  In fact, the Contract, attached as **Exhibit A** to the SAC, disproves Plaintiff's claim.  Because Plaintiff

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

offers no explanation or calculation to support his conclusory assertion that the MAPR should be 26.31% or that United Auto failed to disclose any Prepaid Interest assessed on the Contract, his first and second claims cannot survive this Motion.

Finally, Plaintiff's third claim that he was unlawfully required to submit to arbitration fails because the arbitration provision in the Contract includes a prominently displayed opt-out clause, which Plaintiff did not exercise.  Cases in the Ninth Circuit provide that an arbitration provision with an opt-out clause is by definition not mandatory. Accordingly, United Auto respectfully requests that this Court dismiss this action in its entirety, without leave to amend, for failure to state a claim for relief.

## II.   LEGAL ARGUMENT

### A.   The MLA Expressly Exempts Auto Finance Transactions, Such As Plaintiff's Auto Finance Contract

In the Opposition, Plaintiff proposes that this Court ignore the plain language of the MLA, which explicitly excludes auto finance transactions from the definition of "consumer credit."  Oppos., at 3:12-8:22.  Notwithstanding this exception, Plaintiff argues that the Court should rely on the DoD's interpretation of a *different exception*, 32 C.F.R. 232.3(f)(2)(iii), which exempts credit transactions that finance "the purchase of personal property" to find that the auto finance exception does not apply. Plaintiff is wrong.

### 1.   The Plain Language Of The MLA Should Control

"When interpreting a statute, '[the Ninth Circuit Court] look[s] first to the plain language of the statute, construing the provisions of the entire law, including its object and policy, to ascertain the intent of Congress.'  If the plain meaning of the statute is unambiguous, that meaning is controlling[.]"  *Zuress v. Donley*, 606 F.3d 1249, 1252–53 (9th Cir. 2010).  Similarly, "[t]o interpret a regulation, [courts in the Ninth Circuit] look first to its plain language.  As with legislation, [courts] presume the drafters said

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

what they meant and meant what they said.  If the regulation is unambiguous, its plain meaning controls unless such reading would lead to absurd results." *United States v. Bucher*, 375 F.3d 929, 932 (9th Cir. 2004) (*citing United States v. Hagberg*, 207 F.3d 569, 574 (9th Cir. 2000); *Reno v. National Transp. Safety Bd.*, 45 F.3d 1375, 1379 (9th Cir.1995); *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)).;

Here, the MLA's statutory "auto finance exemption" explicitly excludes auto finance transactions from the definition of "consumer credit":

> The term "consumer credit" has the meaning provided for such term in regulations prescribed under this section, *except that such term does not include … a loan procured in the course of purchasing a car* or other personal property, *when that loan is offered for the express purpose of financing the purchase and is secured by the car* or personal property procured.

10 U.S.C. § 987(i)(6).  The MLA's regulations provide that "consumer credit" means "credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is: (i) Subject to a finance charge; or (ii) Payable by a written agreement in more than four installments." 32 C.F.R. §232.3 (f)(1).  However, the MLA's regulation also expressly excludes auto finance transactions:

> [C]onsumer credit does not mean: any credit transaction that is expressly intended to finance the purchase of a motor vehicle when the credit is secured by the vehicle being purchased[.]

32 C.F.R. 232.3(f)(2)(ii).

Here, Plaintiff financed the purchase of a 2011 GMC Acadia SUV (the "Vehicle").  Plaintiff's Contract was secured by the Vehicle and assigned to United Auto.  SAC, SAC, **Exhibit A**, Installment Contract at 1.  **Exhibit A**, Installment Contract at 1.  Thus, based on the MLA's statutory and regulatory definitions, the financing of Plaintiff's Vehicle purchase is not a "consumer credit" transaction, and

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 3 -

therefore is not subject to the MLA's mandates or prohibitions.  As such, Plaintiff's SAC, which is based entirely on the MLA, should be dismissed without leave to amend.

The MLA's legislative history supports this finding.  The MLA was originally enacted to protect active members of the military and their dependents from predatory loan products, such as auto title loans where a consumer's vehicle title is used as security for a loan:

> [T]he Department "focus[ed] on three problematic credit products that the Department identified in its August 2006 Report to Congress on the Impact of Predatory Lending Practices on Members of the Armed Forces and Their Dependents [("2006 Report")]:  Payday loans, vehicle title loans, and refund anticipation loans."  The Department elected, at that time, to define the scope of "consumer credit" covered by the regulation as a narrow band of products within these three categories of credit[.]

DoD, Proposed Rules, Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 79 FR 58602-01, 58603 (September 29, 2014) ("2014 DoD Proposed Rules").  As such, the original version of the MLA, which was effective from October 1, 2007 to September 30, 2015, defined "consumer credit" transactions as only "Payday loans," "Vehicle title loans," and "Tax refund anticipation loans."  32 C.F.R. § 232.3(b)(1) (eff. Oct. 1, 2007 to Sept. 30, 2015).  Notably, the original version of the MLA also excepted, "[a]ny credit transaction to finance the purchase or lease of a motor vehicle when the credit is secured by the vehicle being purchased or leased."  32 C.F.R. § 232.3(b)(2)(ii) (Sept. 30, 2015).

In 2014, the DoD set out to expand the scope of "consumer credit" transactions because it "believe[d] that the narrowly defined parameters of the credit products regulated as 'consumer credit' under the existing regulation do not effectively provide

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 4 -

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

the protections intended to be afforded to Service members and their families under the MLA." 2014 DoD Proposed Rules, 79 FR 58602-01, at 58610. However, the DoD still made clear that the MLA would continue to "except … loans that are mortgage loans and purchase-money financing for vehicles or other personal property." *Id.* at 58636. Against this backdrop, it is clear that the MLA was not intended to govern auto finance contracts secured by the purchased vehicle. Accordingly, Plaintiff's MLA claims each fail.

2.    **The DoD's Interpretation Of 32 C.F.R. 232.3(f)(2)(iii), A Separate Regulatory Exception Governing The Finance of Personal Property Purchases, Has No Bearing Here**

Plaintiff's reliance on the DoD's interpretation of a *different exception*, 32 C.F.R. 232.3(f)(2)(iii), which exempts credit transactions that finance "the purchase of personal property," is misplaced. Plaintiff cites the DoD's 2016 interpretive ruling entitled, "Military Lending Act Limitations on Terms of Consumer Credit Extended to Service Members and Dependents" ("2016 DoD Ruling"). Opposition, at 4:25-5:12. In that ruling, the DoD specifically evaluated the *personal property exemption* in answering the question, "Does credit that a creditor extends for the purpose of purchasing personal property, which secures the credit, fall within the exception to 'consumer credit' under 32 CFR 232.3(f)(2)(iii) *where the creditor simultaneously extends credit in an amount greater than the purchase price*?" 2016 DoD Ruling, 81 FR 58840-01, at *58841 (August 26, 2016) (italics added). The DoD answered "No." *Id.* The DoD explained that a credit transaction providing financing above and beyond the cost of the personal property (i.e. a "cash advance loan") is unrelated to the purchase of the personal property and would not be exempt from the MLA:

> A hybrid purchase money and *cash advance loan* is not expressly intended to finance the purchase of personal property, because the loan provides additional financing that is unrelated to the purchase. To

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

qualify for the purchase money exception from the definition of consumer credit, a loan must finance **only the acquisition of personal property**. Any credit transaction that provides purchase money secured financing of personal property along with *additional "cash-out" financing* is not eligible for the exception under § 232.3(f)(2)(iii)[.]

*Id.* (italics and bold added).  The 2016 DoD Ruling on personal property finance transactions is inapposite here for obvious reasons.

*First*, Plaintiff does not allege that he received a "cash advance loan" or "additional cash-out financing" for any amount not contained in his Contract or related to his Vehicle purchase.  Plaintiff's financing from United Auto was strictly related to his vehicle purchase for costs directly associated with the purchase.  SAC, Dkt. No. 31, ¶¶ 30-31, **Exhibit A**.  For example, he does not claim that United Auto provided him an additional $1,000.00 above the costs associated with the vehicle purchase to buy a new television or watch.  The alleged "GAP Coverage, a Processing Fee, and Prepaid Interest" were each itemized in the Contract and were inextricably tied to Plaintiff's purchase of the Vehicle.

*Second,* the auto finance exemption is entirely independent of and separate from the personal property exemption.  *Compare* 32 C.F.R. 232.3(f)(2)(ii) and 32 C.F.R. 232.3(f)(2)(iii).  As discussed in United Auto's opening brief, Plaintiff's MLA claims appear to have arisen from a now void interpretive ruling issued by the DoD on December 14, 2017 (the "December 2017 Interpretive Rule").  82 Fed. Reg. 58739 (Dec. 14, 2017).  In the December 2017 Interpretive Rule, the DoD specifically addressed the auto finance exemption and briefly expanded the scope of the MLA to include auto finance transactions that included the GAP Waiver costs in the Amount Financed.  The DoD had reasoned that the GAP Waiver was a "*credit-related* product or service rather than a product or service expressly related to the motor vehicle" (e.g. leather seats).  Importantly, however, in February 2020 the DoD affirmatively

1  withdrew this portion of the December 2017 Interpretive Rule, and in so doing,

2  returned the MLA to its original scope of coverage excluding auto finance transactions

3  entirely based on the 2016 DoD Ruling.  *See* February 28, 2020 Interpretive Rule, 85

4  Fed. Reg. 11842-02, 11843 (Feb. 28, 2020) ("2020 DoD Ruling").

5       Recognizing this, Plaintiff asks the Court to apply the DoD's 2016

6  interpretation of the personal property exemption to the auto finance exemption.

7  Opposition, at 7:21-25.  However, in the 2020 Ruling the DoD said nothing to even

8  remotely suggest that the 2016 DoD Ruling should apply to the auto finance

9  exemption.  2020 DoD Ruling, 85 Fed. Reg. 11842-02, 11843.  Instead, the DoD

10  raised concerns about its prior 2017 Interpretive Rule, including that "creditors may

11  not extend credit if they could not take a security interest in the vehicle being

12  purchased."  2020 DoD Ruling, 85 Fed. Reg. 11842-02, 11843.  Other concerns

13  included the likelihood that dealerships will not offer GAP Waivers to covered

14  members and the inability of dealerships to perfect their security interests in the

15  vehicles.  *See Texas Independent Automobile Dealers Association*, Mind the Gap…

16  Insurance (November 20, 2019) (*available at*

17  https://www.txiada.org/blog_home.asp?display=244) ("Because of the compliance

18  risk, and concerns surrounding perfection of security interests if these products are

19  included in a covered transaction, many dealers and finance companies have decided

20  not to offer the products to those covered by the MLA.  I think we all agree such a

21  decision does not benefit anyone – especially servicemembers[.]"); *Washington Area*

22  *New Dealers Association*, New DOD Interpretation of Military Lending Act Affects

23  Dealers (*available at* https://wanada.org/new-dod-interpretation-of-military-lending-

24  act-affects-dealers/) ("A new interpretation of the Military Lending Act (MLA) by the

25  U.S. Department of Defense (DOD) should cause dealers to question whether they

26  will sell GAP protection and credit insurance to active duty military personnel and

27  their dependents.").  As such, the DoD vacated the 2017 Interpretive Ruling and left

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 7 -

1   the auto finance exemption undisturbed, without limitation.  2020 DoD Ruling, 85

2   Fed. Reg. 11842-02, 11843.

3       *Third*, common sense dictates the differential treatment of automobile

4   purchases and personal property purchases.  If the credit for the purchase of personal

5   property also provides for a cash advance loan to purchase other unrelated products,

6   such credit is no different from a general credit card or installment loan, which is

7   governed by the MLA.  32 C.F.R. 232.3(f)(1); FDIC Consumer Compliance

8   Examination Manual, MLA, V-13.1 (Sept. 2016) (available at

9   https://www.fdic.gov/regulations/compliance/manual/5/v-13.1.pdf) ("Some examples

10  of additional credit products now subject to MLA protections when made to covered

11  borrowers include: Credit cards; … Certain installment loans (but not installment

12  loans expressly intended to finance the purchase of a vehicle or personal property

13  when the credit is secured by the vehicle or personal property being purchased.").

14  Again, Plaintiff does not claim to have received a "cash advance loan" or "additional

15  cash out financing" from United Auto.  Accordingly, Plaintiff's MLA claims fail as a

16  matter of law.

17      **3.**    **United Auto Is Not A "Creditor" Under The MLA**

18      In the Opposition, Plaintiff argues that United Auto is a "creditor" under the

19  MLA because Plaintiff's "GAP Coverage" was financed under his Contract.

20  Opposition, at 8:27-9:2.  To the contrary, as explained above, the absence of a valid

21  "consumer credit" transaction here also means that United Auto is not a "creditor"

22  under the MLA.  32 C.F.R. § 232.3(i) ("Creditor . . . means a person who is:

23  (1) Engaged in the business of extending *consumer credit*; or (2) An assignee of a

24  person described in paragraph (i)(1) of this section with respect to any *consumer*

25  *credit* extended.") (emphasis added).

26      In addition, as set forth in United Auto's opening brief, the SAC establishes that

27  United Auto engages in auto finance transactions by accepting the assignment of retail

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

DEFENDANT UNITED AUTO CREDIT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

installment sale contracts from auto dealerships, which are secured by the vehicles sold by the dealerships.  SAC ¶¶ 11, 21-25.  Plaintiff does dispute this contention in his Opposition.  Plaintiff does not allege that United Auto provides "hybrid purchase money and cash advance loans" or gave him credit for any amounts not set forth in his vehicle purchase Contract.  Because United Auto cannot be a "creditor" under the MLA, Plaintiff's SAC fails as a matter of law.

**B.      Plaintiff's First And Second Claims Under 10 U.S.C. § 987(c)(1) Fail As A Matter of Law**

In the Opposition, in support of his first and second claims relating to the allegedly inaccurate MAPR and undisclosed "Prepaid Interest," Plaintiff argues that "the terms of the Installment Contract itself, and which is attached to the Complaint, clearly support the allegations in the Second Amended Complaint which is all that is required at this stage of the proceedings."  Opposition, 9:9-13.  Plaintiff further argues that "[e]ven without a specifically enumerated calculation in the complaint, the allegation that Defendant charged Plaintiff an undisclosed MAPR rate of 26.31% is clearly extracted from the numbers set forth in the contract."  Opposition, 9:23-25.  To the contrary, the purported MAPR of 26.31% is not "clearly extracted from the numbers set forth in the contract."  In fact, Plaintiff's inaccurate MAPR claim is belied by the amounts in the Installment Contract, attached as **Exhibit A** to the SAC. Plaintiff offers no explanation or calculation to support his conclusory assertion that the MAPR should be 26.31%.

It is well settled that "[f]or an allegation to be 'entitled to the assumption of truth,' it must be well-pleaded, that is, it must set forth a non-conclusory factual allegation rather than a legal conclusion.  The Court need not accept as true *unreasonable inferences, unwarranted deductions of fact*, or conclusory legal allegations cast in the form of factual allegations.  'In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 9 -

from that content, *must be plausibly suggestive of a claim* entitling the plaintiff to relief.'" *Alanis v. Nelson*, No. CV 11-02583-JEM, 2011 WL 13130698, at *2 (C.D. Cal. Oct. 3, 2011) (italics added) (*citing Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) ("conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009)).

This is especially true where the allegations are belied by irrefutable facts from a document or calculation based on information from the complaint.[2] *See, e.g., 16062 Sw. Freeway, LLC v. Principal Commercial Funding, LLC*, No. 07-CV-1998, 2008 WL 11508654, at *2 (S.D. Cal. Feb. 5, 2008) ("Plaintiffs plead four claims… concerning the 365/360 method of interest calculation that leaves a substantial balance at the end of the loan. The Court holds that these claims fail as a matter of law. As Defendant points out, quotations from the loan documents show that the terms are disclosed and explained in the loan documents."); *Gipbsin v. Runnels*, No. CIV S-03-1547, 2006 WL 3299883, at *2 (E.D. Cal. Nov. 14, 2006), *report and recommendation adopted sub nom.*, 2007 WL 776607 (E.D. Cal. Mar. 12, 2007) ("Defendants have met their burden of presenting evidence that plaintiff failed to exhaust administrative remedies for any of the claims at bar prior to suit, and plaintiff has failed to present any evidence that rebuts defendants' showing. Accordingly, defendants' motion to dismiss should be granted and this action should be dismissed[.]"); *Allied World Surplus Lines Ins. Co. v. Hawaii Med. Serv. Ass'n*, No. CV 17-00156, 2017 WL 4286306, at *5–6 (D. Haw. Sept. 27, 2017) (granting motion

---

[2] Plaintiff's reliance on *Hanson-Poulsen v. Dep't of Def. of United States* is misplaced, and misleading. Opposition, at 10:26-11:2. There, the court summarized the plaintiff's argument and explained, "Plaintiff also argues that the equitable considerations for applying tolling involve questions of fact, and thus are inappropriate for decision on a motion to dismiss." No. CV165786DMGAFMX, 2018 WL 8729581, at *8 (C.D. Cal. June 26, 2018). The court did not find there was a disputed factual allegation and ultimately granted the motion to dismiss on the grounds that the plaintiff failed to sufficiently plead equitable tolling. *Id.*, at 8-9.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1   to dismiss: "Plaintiffs have the burden to submit evidence to rebut Defendant's

2   evidence. Plaintiffs rely only on conclusory statements in their complaint and

3   opposition. Plaintiffs have not provided evidence to support their bald assertion of

4   termination.").

5          Plaintiff's allegations regarding the allegedly improper MAPR and undisclosed

6   Prepaid Interest are conclusory and do not give any factual basis for the calculation of

7   either the alleged $129.61 Prepaid Interest or the 3.32% difference in rate. *See*

8   *generally* SAC.  In the Opposition, Plaintiff boldly contends that "[e]ven without a

9   specifically enumerated calculation in the complaint, the allegation that Defendant

10  charged Plaintiff an undisclosed MAPR rate of 26.31% is clearly extracted from the

11  numbers set forth in the contract," but he still provides no factual basis for this

12  assertion.  Opposition, at 9:23-25.  As set forth in detail in United Auto's opening

13  brief and **Exhibit 1** attached to United Auto's Request for Judicial Notice ("RJN"), by

14  adding the fees and costs itemized in the Contract, it is indisputable that the amounts

15  for the $395.00 GAP Waiver and $250.00 Processing Fee are included in the total

16  Amount Financed of $14,698.24, which is the basis for the 22.99% MAPR.  See RJN,

17  Dkt. No. 33, **Exhibit 1**.  Plaintiff does not, and cannot, dispute the calculation

18  provided in United Auto's Motion and the amortization schedule in the RJN.

19         Similarly, the allegation that United Auto failed to display the Prepaid Interest

20  charge of $129.61 is also belied by the Contract.  SAC, ¶¶ 31, 52, 66.  The Contract

21  establishes that Plaintiff was *not* charged for Prepaid Interest or any other finance

22  charge.  Line "z" in the Itemization of Amount Financed, labeled "Prepaid Finance

23  Charge," states "N/A," meaning "not applicable."  SAC, **Exhibit A**, Installment

24  Contract, at 2.  In the face of the Contract's straightforward indication that Plaintiff

25  was *not* charged for prepaid interest and the amortization table based on amounts in

26  the Contract, it is insufficient for Plaintiff to simply argue the opposite.  *Daniels-Hall*

27  *v. Nat'l Educ. Ass'n,* 629 F.3d 992, 998 (9th Cir. 2010) ("We are not . . . required to

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 11 -

DEFENDANT UNITED AUTO CREDIT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1  accept as true allegations that contradict exhibits attached to the Complaint[.]").

2      Accordingly, Plaintiff's conclusory allegation that the MAPR stated in his

3  Contract cannot survive this Motion.  *Forouzesh v. CVS Pharmacy, Inc.*, No. 2:18-cv-

4  04090, 2019 WL 652887, at *2 (C.D. Cal., Feb. 15, 2019) ("[A] court need not accept

5  conclusory allegations, 'allegations that contradict exhibits attached to the complaint

6  or matters properly subject to judicial notice,' 'unwarranted deductions of fact, or

7  unreasonable inferences.'") (*citing Daniels-Hall,* 629 F.3d at 998).

8  **C.**    **Plaintiff Does Not Dispute That "Prepaid Interest" Is Not Applied To**

9         **Closed-Ended, Simple Interest Contracts, Like Plaintiff's Installment**

10         **Contract**

11      Lastly, Section 1026.17 of Regulation Z provides that Plaintiff's purported

12  concept of "prepaid interest"—which appears to be based on the "irregular" number of

13  days between the Contract date and the first payment date—does not apply to closed-

14  ended, simple interest contracts, like Plaintiff's Installment Contract.  In the

15  Opposition, Plaintiff fails to address this contention.

16      As explained in United Auto's opening brief, because Plaintiff's first payment

17  was due within 45 days of the Contract date (based on a Contract date of October 13,

18  2018 and a first payment date of November 27, 2018), which is 15 days longer than

19  the regular period of one month (*i.e.*, 45 days versus a regular period of 30 days), in

20  calculating the MAPR and making disclosures, the Contract accurately lists a Prepaid

21  Finance Charge of no amount, or N/A.  *See* Installment Contract, at 2; 12 C.F.R.

22  § 1026.17(c)(4)(ii) ("In making calculations and disclosures, the creditor may

23  disregard any irregularity in the first period...."); 32 C.F.R. § 232.4(c)(2).  Thus, any

24  purported "payment schedule irregularity" in Plaintiff's first payment cannot serve as

25  the basis for a claim that United Auto failed to include "prepaid interest" in the

26  Contract's calculation of MAPR.  Accordingly, Plaintiff's claim that United Auto

27  failed to disclose Prepaid Interest or failed to properly calculate the MAPR based on

28

- 12 -

1  the allegedly undisclosed Prepaid Interest should be dismissed.

2  **D.     The Court May Take Judicial Notice Of Mathematical Calculations**

3  **Contained In The Amortization Table, Attached As Exhibit 1 To United**

4  **Auto's Request For Judicial Notice**

5          Plaintiff contends that the Court should not take judicial notice of the

6  calculations in the amortization table on the grounds that "the amortization schedule

7  does not prove what Defendants purports it does" and "whether the correct MAPR

8  rate was used is a disputed factual issue."  Opposition, at 11: 4-7, 25-28.  However,

9  Plaintiff does not dispute the accuracy of the calculations or offer an alternative

10  calculation.  *See* Opposition, at 11.  He also cannot dispute that the amounts set forth

11  in the table are based on the itemized amounts contained in the Contract.  In the Ninth

12  Circuit, it is well settled that district courts may take judicial notice of "matters of

13  mathematics" based on documents attached to or referenced in the complaint.  *Miller*

14  *v. Fed. Land Bank of Spokane*, 587 F.2d 415, 422 (9th Cir. 1978) ("This is a matter of

15  mathematics, of which the court could and should have taken judicial notice.");

16  *Oklahoma Firefighters Pension & Retirement Sys. v. Ixia*, No. 13-cv-8440 MMM,

17  2015 WL 1775221, at *17 (C.D. Cal. April 14, 2015) (taking judicial notice of

18  "spreadsheets and tabulations created by defendants"); *In re Netflix, Inc. Sec. Litig.*,

19  No. C 04-2978 WHA, 2005 WL 3096209, at *1 (N.D. Cal. Nov. 18, 2005) (taking

20  judicial notice of *inter alia,* "certain SEC filings, calculations based upon information

21  in those filings").  Moreover, none of the cases cited by Plaintiff in the Opposition

22  stand for the proposition that mathematical calculations cannot be the subject of

23  judicial notice.

24          Here, the underlying data in amortization table is derived exclusively from

25  information contained in the SAC and the Contract.  Specifically, the amortization

26  schedule is based on the annual percentage rate, amount financed, and monthly

27  payment from the Contract—a military annual percentage rate of 22.99%, an amount

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

1  financed of $14,698.24, and a monthly payment amount of $517.19 with the first

2  payment due date of November 27, 2018.  SAC ¶¶ 30–31; SAC **Exhibit A**, Contract

3  at 1.  Additionally, the calculations themselves are explained, by each column and

4  line, in United Auto's opening brief, making the data available for the Court's

5  inspection and verification.  *See* Motion to Dismiss, Dkt. No. 32, at 14:10-17:2.

6  Accordingly, the Court should take judicial notice of the calculations contained in the

7  amortization table.

8  **E.**    **Plaintiff's Third Claim Under 10 U.S.C. § 987(e)(3) for Mandatory**

9         **Arbitration Fails As A Matter of Law**

10        In the Opposition, Plaintiff contends that the opt-out clause in the Arbitration

11  Provision does not save United Auto from liability under Section 987(e)(3) of the

12  MLA.  Opposition, at 12:2-18:7.  Plaintiff characterizes the opt-out provision as a

13  "loophole" enabling United Auto to "entrap" borrowers like him in "mandatory

14  arbitration agreements with post-signing opt-out clauses," and a "time-limited escape

15  clause."  Opposition, at 12-13.  These are red herrings; the issue is quite

16  straightforward.  In 10 U.S.C. § 987(e)(3), the MLA prohibits creditors from

17  "requiring" covered borrowers to submit to arbitration.  Here, United Auto did not

18  require Plaintiff to submit to arbitration.  Thus, Plaintiff does not have a claim under

19  Section 987(e)(3).

20  **1.**    **The MLA Does Not Prohibit Arbitration As A Blanket Rule—It**

21         **Only Prohibits Arbitration When It Is A Condition Of Obtaining**

22         **Consumer Credit**

23        There is no dispute that the MLA prohibits mandatory arbitration; this is in the

24  plain language of the statute.  10 U.S.C. § 987(e)(3) ("It shall be unlawful for any

25  creditor to extend consumer credit to a covered member or a dependent of such a

26  member with respect to which the creditor *requires the borrower to submit* to

27  arbitration . . . in the case of a dispute.") (italics added).  But Plaintiff's interpretation

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 14 -

1    that "*[a]ny* arbitration provision that would apply to borrowers covered by the MLA is

2    prohibited and unenforceable" is an overreach.  Opposition, at 13 (emphasis in

3    original).  The plain language of the MLA does not prohibit arbitration as a blanket

4    rule—it only prohibits creditors from "requiring" covered borrowers to submit to

5    arbitration as a term of their extension of credit.

6         **2.      The Opt-Out Clause Renders The Arbitration Provision Optional,**

7              **And Therefore Not In Violation Of The MLA**

8         Here, the Arbitration Provision expressly provides that it is not mandatory and

9    gives Plaintiff a 30-day window in which to opt out, even if he failed to object to the

10   provision on the day the Contract was consummated.  SAC, **Exhibit A**, at 5.  His

11   access to financing from United Auto—with the same interest, fees, and all terms—

12   was the same whether or not he agreed to the Arbitration Provision.  *Id.*  By definition,

13   the Arbitration Provision was optional, and whether he accepted or rejected it had no

14   bearing on whether or not he could obtain the financing for the Vehicle.  *See*

15   OPTIONAL, Oxford English Dictionary, US English ("available to be chosen but not

16   obligatory"); OPTION, Black's Law Dictionary (11th ed. 2019) ("the right or power

17   to choose; something that may be chosen.").

18        The opt-out process makes it doubly clear that United Auto did not require

19   Plaintiff to submit to arbitration as a condition of its extension of consumer credit.

20   This situation was previously addressed in *Garrett v. Monterey Financial Services,*

21   *LLC*, No. 18-cv-325 JKB, 2018 WL 3579856 (D. Md. July 25, 2018).  There the

22   plaintiff claimed that the defendant had violated the MLA's prohibition against

23   mandatory arbitration provisions.  *Id*. at *3-4.  The plaintiff's installment agreement

24   stated that by entering into the included arbitration provision, the plaintiff was "giving

25   up [her] right to have a trial by jury to resolve any dispute alleged against us or related

26   third parties" and "giving up [her] right to have a court resolve any dispute alleged

27   against us or related third parties." *Id.* at *1.  However, it also contained an "OPT-

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

DEFENDANT UNITED AUTO CREDIT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS
PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT

1   OUT PROCESS" in which the plaintiff had sixty calendar days to send in a written

2   notice that she rejected the arbitration clause.  *Id.* (capitalized in original).  As such,

3   the court concluded that "the Agreement does not '<u>require</u> the borrower to submit to

4   arbitration' because the arbitration provision contains an opt-out clause."  *Id.* at *4

5   ("Garrett also failed to demonstrate that the arbitration provision violates the MLA. …

6   the Agreement does not 'require the borrower to submit to arbitration' because the

7   arbitration provision contains an opt-out clause.") (emphasis in original).

8       **3.**    **Cases In The Ninth Circuit Provide That When An Arbitration**

9             **Provision Includes A Meaningful Opt-Out Clause, The Arbitration**

10            **Provision Is Optional Rather Than Mandatory**

11        In the Ninth Circuit, it is well settled that when an arbitration provision

12  provides an opt-out procedure, the consumer is given a "meaningful choice" whether

13  to proceed with arbitration, and the provision is not "mandatory" for purposes of

14  determining whether it violates a ban on mandatory arbitration.

15        Of the various cases cited in United Auto's opening brief and in Plaintiff's

16  Opposition, the most apposite is *Hose v. Washington Inventory Servs, Inc.*, because it

17  also involved a statute that prohibited mandatory arbitration.  No. 14-cv-2869, 2017

18  WL 3085846 (S.D. Cal. July 19, 2017).  In *Hose*, the statute at issue was the National

19  Labor Relations Act ("NLRA"), which provides that employers "may not condition

20  employment on the requirement" that employees sign any "contracts that foreclose the

21  possibility of concerted work-related legal claims."  *Id.* at *3.  In other words, under

22  the NLRA, employers are not allowed to *require* that their employees sign arbitration

23  agreements containing class action waivers as a condition of their employment.  *Id.*

24  But arbitration agreements are not flat-out prohibited under the NLRA.  Thus, when

25  the *Hose* plaintiff's employment contract contained an arbitration provision and class

26  action waiver, but *also* contained an opt-out clause and specified that arbitration "is

27  not a mandatory condition of your employment at the Company," the court held that

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

- 16 -

1  arbitration was not a requirement or condition of the plaintiff's employment, and the

2  provision was enforceable under the NLRA.  *See id.* at *4, 6.

3      The same result should follow here.  Much like the NLRA prohibits employers

4  from conditioning employment on the requirement that the prospective employee

5  signs an arbitration provision, here the MLA prohibits creditors from conditioning the

6  extension of credit on the requirement that the prospective borrower agree to binding

7  arbitration.  But just like in *Hose*, where the arbitration clause contained an opt-out

8  provision and expressly stated that it was not a condition of his employment, the

9  Arbitration Provision in Plaintiff's Contract *also* contained an opt-out clause and *also*

10  expressly stated — in prominent and conspicuous typeface — that it was not a

11  condition of the credit transaction:

12      **PROCESS TO REJECT THIS ARBITRATION PROVISION…**

13      **Rejecting this Arbitration Provision will NOT affect the terms**

14      **under which we will finance and sell the Property to you or any**

15      **other terms of this Contract, except that the Arbitration Provision**

16      **will not apply.**

17      **CAUTION…  If you approve this Arbitration Provision,**

18      **you have an additional 30 days after signing to reconsider**

19      **and reject your approval, as described above.  If you use**

20      **that process to reject, this Arbitration Provision will not be**

21      **a part of this Contract, but the rest of this Contract will**

22      **still be binding and effective.**

23  SAC, **Exhibit A**, at 5 (emphasis in original).  Plaintiff's argument that the "arbitration

24  provision is truly not an opt-out" lacks merit.  Opposition, at 18:6-7.  The Arbitration

25  Provision was optional to Plaintiff.  When Plaintiff signed the Contract, he certified

26  that he received a copy and "had a chance to read and review it before [he] signed it."

27  *Id.*, at 6.  Accordingly, Plaintiff's claim that United Auto required him to submit to

28

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

1  arbitration fails as a matter of law.  *Rivera v. Uniqlo California, LLC*, No.

2  LACV1702848JAKJPRX, 2017 WL 6539016, at *7 (C.D. Cal. Sept. 8, 2017) (finding

3  that opt-out clause rendered the arbitration agreement not mandatory:  "The

4  Arbitration Agreement expressly states that it is not mandatory. Contrary to Plaintiff's

5  assumption, it clearly states that if Plaintiff decides to opt out, he 'will not be subject

6  to any adverse employment action as a consequence of that decision.'").

## III.   <u>CONCLUSION</u>

8      Plaintiff's Contract with United Auto financed his purchase of the Vehicle,

9  which served as security for the Contract.  That fact alone removes this transaction

10  from the reach of the MLA.  Because the MLA does not apply to Plaintiff's auto

11  finance transaction, the SAC cannot be amended in a way that is non-futile.

12  Accordingly, United Auto respectfully requests that the Court grant this Motion and

13  dismiss this action without leave to amend.

Dated:  October 5, 2020              HOLLAND & KNIGHT LLP

By:  */s/ Raymond Y. Kim*
_____
     Raymond Y. Kim
     Attorneys for Defendant
     United Auto Credit Corporation

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

- 18 -