IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JERRY DAVIDSON, individually, and on )
behalf of all others similarly situated, )
)
        Plaintiff, )
) 1:20-cv-1263 (LMB/JFA)
    v. )
)
UNITED AUTO CREDIT CORPORATION, a )
California corporation, )
)
        Defendant.

MEMORANDUM OPINION

Before the Court is defendant United Auto Credit Corporation ("defendant" or "United")'s Motion to Dismiss Plaintiff's Second Amended Class Action Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Motion to Dismiss") [Dkt. No. 66], to which Jerry Davidson ("plaintiff" or "Davidson") has responded. The Motion to Dismiss has been fully briefed and oral argument has been held. For the reasons discussed below, defendant's Motion to Dismiss will be granted.

I. BACKGROUND

The parties do not dispute the facts alleged in the Second Amended Complaint ("SAC"), and agree that the dispositive issue is whether defendant's Retail Installment Contract and Security Agreement (the "Contract" or "Installment Contract"), through which plaintiff, who was an active member of the United States military, financed his purchase of a 2011 GMC Acadia SUV on October 13, 2018, is covered by the Military Lending Act ("MLA"), 10 U.S.C. § 987 et seq.

Plaintiff describes United as one of the ten largest non-prime automobile lenders in the United States, having over 4,500 auto dealer customers and financing over $350 million in auto

loans to more than 53,000 borrowers. He alleges that United has violated multiple provisions of the MLA. Specifically, the SAC alleges that defendant violated § 987(c)(1) by failing to make mandatory disclosures of various fees including a $250 processing fee, a $350 fee for Guaranteed Asset Protection ("GAP") insurance, and a $129.61 charge for prepaid interest (Count I); violated § 987(c)(1) by failing to disclose the true cost of credit because the true military annual percentage rate ("MAPR") for plaintiff was 26.31% and not 22.99% as written in the Contract (Count II); and violated § 987(e)(3) by requiring borrowers to submit to arbitration (Count III). Plaintiff seeks certification for three different classes, a declaration that the Installment Contracts are void, relief from the void Installment Contracts in the form of rescission, restitution or reformation, statutory damages of $500 per violation, actual and punitive damages, attorneys' fees and costs under 10 U.S.C. § 987(f)(5)(B), injunctive relief, and pre- and post-judgment interest.

Plaintiff filed the initial complaint in the Central District of California on April 1, 2020. After cycling through three district judges and being twice amended, this civil action was transferred to this district. Defendant then refiled its previously filed Motion to Dismiss, which is pending before this Court.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a "plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). A complaint must be more than speculative and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do." Id. (internal quotation marks and citations omitted). Although when deciding a motion to dismiss, a court assumes that the facts alleged in the complaint are true and resolves factual disputes in the plaintiff's favor, Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009), it "is not bound by the complaint's legal conclusions," conclusory allegations, or unwarranted inferences. Id. Moreover, a court is not limited to the facts presented in the complaint and may consider documents attached to the defendant's motion where they are "integral to and explicitly relied on in the complaint." Phillips v. LCI Intern, Inc., 190 F.3d 609, 618 (4th Cir. 1999); see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). Courts are not required to accept as true allegations that contradict exhibits attached to the complaint. Canal Ins. Co. v. Barker, No. 3:07cv339, 2007 WL 3551508, at *2 (E.D. Va. Nov. 15, 2007), aff'd, 358 F. App'x 470 (4th Cir. 2009) (citing Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached pursuant to Rule 10(c), . . . the exhibit prevails.")).

### B. Analysis

1. Military Lending Act ("MLA")

In 2006, the Department of Defense ("DoD") submitted a report to Congress calling for "statutory protections . . . necessary to protect Service members from unfair, deceptive lending practices and usurious interest rates and to require uniform disclosure of credit costs and terms regarding lending practices." Department of Defense, Report on Predatory Lending Practices Directed at Members of the Armed Forces and Their Dependents 46 (Aug. 9, 2006), http://archive.defense.gov/pubs/pdfs/Report_to_Congress_final.pdf ("2006 Report"). The report concluded that "[p]redatory lending practices are prevalent and target military personnel," and that they "undermine[] military readiness, harm[] the morale of troops and their families, and

3

add[] to the cost of fielding an all volunteer fighting force." Id. at 4, 53; see also Huntco Pawn Holdings, LLC v. U.S. Dep't of Def., 240 F. Supp. 3d 206, 211 (D.D.C. 2016). "In response, Congress enacted the MLA," which creates requirements and prohibits certain practices of "creditor[s] who extend[] consumer credit to . . . covered member[s] of the armed forces." Huntco Pawn Holdings, LLC, 240 F. Supp. at 211; 10 U.S.C. § 987(a). The MLA requires lenders to provide more robust disclosures to protect military consumers and redefines "annual percentage rate," which originated under the Truth in Lending Act ("TILA"), to include a variety of fees, credit insurance premiums, and charges for ancillary products. The MAPR defines "interest" as including:

> all cost elements associated with the extension of credit, including fees, service charges, renewal charges, credit insurance premiums, any ancillary product sold with any extension of credit to a servicemember or the servicemember's dependent, as applicable, and any other charge or premium with respect to the extension of consumer credit.

10 U.S.C. § 987(i)(3). Additionally, the MLA makes it "unlawful for any creditor to extend consumer credit to a covered member or a dependent of such a member with respect to which . . . (3) the creditor requires the borrower to submit to arbitration or imposes onerous legal notice provisions in the case of a dispute." 10 U.S.C. § 987(e)(3). Under implementing regulations, creditors must also provide specific written and oral disclosures pursuant to 32 C.F.R. § 232.6 relating to the cost of credit, such as a statement of the MAPR and a clear description of payment obligations. A lender who violates the MLA is subject to civil liability, including actual damages "not less than $500 for each violation," punitive damages, costs, and attorney fees. 10 U.S.C. § 987(f)(5).

The MLA directs the Secretary of Defense to "prescribe regulations to carry out" the MLA, including defining "consumer credit" under the statute. 10 U.S.C. § 987(h). The DoD first adopted MLA implementing regulations in 2007. Limitations on Terms of Consumer Credit

Extended to Service Members and Dependents, 72 Fed. Reg. 50580 (Aug. 31, 2007). On June 17, 2013, the DoD issued an Advanced Notice of Proposed Rulemaking ("Advanced Notice"), "regarding enhancement of the protections that apply to consumer credit extended to members of the armed forces and their dependents" and solicited "comment on the need to revise the Department's existing regulation that, in general, imposes certain limits on and requires certain disclosures relating to the provision of consumer credit to a covered borrower." Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 78 Fed. Reg. 36134-01, 36134 (June 17, 2013). The Advanced Notice contained an excerpt from the Conference Report on a bill entitled National Defense Authorization Act for Fiscal Year 2013, which explained that "[a] recent report by the Consumer Federation of America, The Military Lending Act Five Years Later, . . . . found that many predatory lenders have modified their products to avoid coverage by the Department's rules implementing section 987." 78 Fed. Reg. at 36134; Huntco Pawn Holdings, LLC, 240 F. Supp. 3d at 213. On September 29, 2014, the DoD issued a Notice of Proposed Rulemaking for proposed amendments to the 2007 Rule, Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 79 Fed. Reg. 58602 (Sept. 29, 2014), in which the DoD stated that it "believe[d] that a wider range of credit products offered or extended to Service members reasonably could—and should—be subject to the protections of the MLA, and that the extremely narrow definition of 'consumer credit' permits creditors to structure credit products in order to reduce or avoid altogether the obligations of the MLA." Id. at 58603.

> More specifically, the Department propose[d] to amend its regulation so that, in general, consumer credit covered under the MLA would be defined consistently with credit that for decades has been subject to the protections under the Truth in Lending Act (TILA), namely: Credit offered or extended to a covered borrower primarily for personal, family, or household purpose, and that is (i) subject to a finance charge or (ii) payable by a written agreement in more than four installments."

5

Id. at 58610. On July 22, 2015, the DoD issued the final version of the rule, which adopted the Proposed Rule's expanded definition of "consumer credit." Limitations on Terms of Consumer Credit Extended to Service Members and Dependents, 80 Fed. Reg. 43560 (July 22, 2015).

2. MLA Applicability to Motor Vehicle Purchases

The claims in this complaint fall under two provisions of the MLA, 10 U.S.C. § 987, subdivisions (c)(1) and (e)(3). Both subdivisions govern the extension of "consumer credit";[1] however, the MLA's definition of "consumer credit" explicitly excludes auto finance transactions:

> The term "consumer credit" has the meaning provided for such term in regulations prescribed under this section, except that such term does not include . . . a loan procured in the course of purchasing a car or other personal property, when that loan is offered for the express purpose of financing the purchase and is secured by the car or personal property procured.

10 U.S.C. § 987(i)(6). The regulations implementing the MLA define "consumer credit" as "credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is: (i) Subject to a finance charge; or (ii) Payable by a written agreement in more than four installments." 32 C.F.R. § 232.3(f)(1). That definition is refined in 32 C.F.R. § 232.3(f)(2), which lists a series of transactions that do not qualify as involving "consumer credit." Among the exclusions are transactions involving the purchase of motor vehicles: "[C]onsumer credit does not mean: [a]ny credit transaction that is expressly intended to finance the purchase of a motor vehicle when the credit is secured by the vehicle being purchased." 32 C.F.R. § 232.3(f)(2)(ii).[2]

---

[1] "It shall be unlawful for any creditor to extend <u>consumer credit</u> to a covered member . . . with respect to which . . . ." 10 U.S.C. § 987(e)(3) (emphasis added).

[2] A similar exception exists in § 232.3(f)(2)(iii) for transactions involving personal property: "[Consumer credit does not mean: [a]ny credit transaction that is expressly intended to finance the purchase of personal property when the credit is secured by the property being purchased."

6

The parties do not dispute that the Contract at issue was intended to finance the purchase of plaintiff's 2011 GMC Acadia SUV. See SAC, Exhibit ("Ex.") A, Installment Contract at 1, "Description of Property." The parties also do not dispute that the Contract was secured by the vehicle. SAC, Ex. A, Installment Contract at 1 ("Security: You are giving us a security interest in the Property purchased."); id. at 4 ("To secure your payment and performance under the terms of this Contract, you give us a security interest in the Vehicle[.]"). As such, defendant argues that the Contract does not qualify as a "consumer credit" transaction and is expressly exempt from the requirements of the MLA because it financed the purchase of plaintiff's vehicle and was secured by the vehicle.

In 2016 and 2017, the DoD issued interpretations of whether the exceptions in 32 C.F.R. § 232.3(f)(2)(ii) and (iii) apply to transactions that include financing items other than the property being used to secure the transaction. In 2016, in the form of a question and answer, the DoD issued an interpretation of the exemption for financing the purchase of personal property:

> 2. Does credit that a creditor extends for the purpose of purchasing personal property, which secures the credit, fall within the exception to "consumer credit" under 32 CFR 232.3(f)(2)(iii) where the creditor simultaneously extends credit in an amount greater than the purchase price?
>
> **Answer:** No. Section 232.3(f)(1) defines "consumer credit" as credit extended to a covered borrower primarily for personal, family, or household purposes that is subject to a finance charge or payable by written agreement in more than four installments. Section 232.3(f)(2) provides a list of exceptions to paragraph (f)(1), including an exception for any credit transaction that is expressly intended to finance the purchase of personal property when the credit is secured by the property being purchased. A hybrid purchase money and cash advance loan is not expressly intended to finance the purchase of personal property, because the loan provides additional financing that is unrelated to the purchase. To qualify for the purchase money exception from the definition of consumer credit, a loan must finance only the acquisition of personal property. Any credit transaction that provides purchase money secured financing of personal property along with additional 'cashout' financing is not eligible for the exception under § 232.3(f)(2)(iii) and must comply with the provisions set forth in the MLA regulation.

7

81 Fed. Reg. 58840-01, 58841 (August 26, 2016). On December 14, 2017, using the same question and answer format, the DoD issued a second set of interpretations, which were applicable to loans for the purchase of motor vehicles as well as for personal property:

> 2. Does credit that a creditor extends for the purpose of purchasing a motor vehicle or personal property, which secures the credit, fall within the exception to "consumer credit" under 32 CFR 232.3(f)(2)(ii) or (iii) where the creditor simultaneously extends credit in an amount greater than the purchase price of the motor vehicle or personal property?
>
> **Answer:** The answer will depend on what the credit beyond the purchase price of the motor vehicle or personal property is used to finance. Generally, financing costs related to the object securing the credit will not disqualify the transaction from the exceptions, but financing credit-related costs will disqualify the transaction from the exceptions. Section 232.3(f)(1) defines "consumer credit" as credit offered or extended to a covered borrower primarily for personal, family, or household purposes that is subject to a finance charge or payable by written agreement in more than four installments. Section 232.3(f)(2) provides a list of exceptions to paragraph (f)(1), including an exception for any credit transaction that is expressly intended to finance the purchase of a motor vehicle when the credit is secured by the vehicle being purchased and an exception for any credit transaction that is expressly intended to finance the purchase of personal property when the credit is secured by the property being purchased. A credit transaction that finances the object itself, as well as any costs expressly related to that object, is covered by the exceptions in § 232.3(f)(2)(ii) and (iii), provided it does not also finance any credit-related product or service. For example, a credit transaction that finances the purchase of a motor vehicle (and is secured by that vehicle), and also finances optional leather seats within that vehicle and an extended warranty for service of that vehicle is eligible for the exception under § 232.3(f)(2)(ii). Moreover, if a covered borrower trades in a motor vehicle with negative equity as part of the purchase of another motor vehicle, and the credit transaction to purchase the second vehicle includes financing to repay the credit on the trade-in vehicle, the entire credit transaction is eligible for the exception under § 232.3(f)(2)(ii) because the trade-in of the first motor vehicle is expressly related to the purchase of the second motor vehicle. . . . **In contrast, a credit transaction that also finances a credit-related product or service rather than a product or service expressly related to the motor vehicle . . . is not eligible for the exceptions** under § 232.3(f)(2)(ii) and (iii). **For example, a credit transaction that includes financing for Guaranteed Auto Protection insurance or a credit insurance premium would not qualify for the exception under § 232.3(f)(2)(ii) or (iii).** Similarly, a hybrid purchase money and cash advance credit transaction is not expressly intended to finance the purchase of a motor vehicle . . . because the credit transaction provides additional financing that is unrelated to the purchase. Therefore, any credit transaction that provides purchase money secured financing of a motor vehicle . . . along with additional "cashout" financing is not eligible for the exceptions under § 232.3(f)(2)(ii) and (iii) and must comply with the provisions set forth in the MLA regulation.

82 Fed. Reg. 58739-01, 58740 (Dec. 14, 2017) (emphasis added). The parties agree that if the 2017 DoD interpretation were currently in effect there would be no dispute over the Contract being governed by the MLA. It would be covered, and the Court would have to address the remaining issues in the Motion to Dismiss regarding whether the contract violated the MLA. What complicates this issue is the DoD's decision on February 28, 2020 to withdraw the 2017 Q&A interpretation:

> Subsequent to the publication of the December 14, 2017 Interpretive Rule, the Department received several formal requests for the Department to withdraw the amended Q&A #2 from the December 14, 2017 Interpretive Rule. One point raised in the requests for withdrawal was a concern that creditors' [sic] would be unable to technically comply with the MLA if the purchase included products not expressly related to the purchase of the vehicle as described in the amended Q&A #2 from the December 14, 2017 Interpretive Rule, because § 232.8(f) of the regulation would prohibit creditors from taking a security interest in the vehicle in those circumstances and creditors may not extend credit if they could not take a security interest in the vehicle being purchased. The Department finds merit in this concern and agrees additional analysis is warranted. In withdrawing the amended Q&A #2, published on December 14, 2017, because of unforeseen technical issues between the amended Q&A #2 and 32 CFR 232.8(f), the Department, absent of additional analysis, takes no position on any of the arguments or assertions advanced as a basis for withdrawing the amended Q&A #2 from the December 14, 2017 Interpretive Rule. . . .
>
> This amended interpretive rule does not change the regulation implementing the MLA, but merely states the Department's preexisting interpretations of an existing regulation.

February 28, 2020 Interpretive Rule, 85 Fed. Reg. 11842-02, 11843 (Feb. 28, 2020).

Plaintiff argues that his loan included three identifiable credit-related charges that were not related to the motor vehicle itself: GAP coverage, a processing fee, and prepaid interest. SAC, Ex. A, Installment Contract. As a result, the loan did not finance "only" the motor vehicle, making the MLA motor vehicle exception inapplicable. Defendant responds that accepting plaintiff's argument would essentially reinstate the 2017 Q&A Interpretation, which the DoD expressly withdrew on February 28, 2020 due to its incompatibility with 32 C.F.R. § 232.8(f).

Although the DoD stated that it "takes no position on any of the arguments or assertions advanced as a basis for withdrawing" the 2017 Q&A Interpretation, adopting plaintiff's position would essentially contradict the DoD's withdrawal of the guidance by effectively reinstating it, because the clear language of 32 C.F.R. § 232.3(f)(2)(ii) excepts the Contract at issue.

Plaintiff's argument that the GAP coverage, processing fee, and prepaid interest were unrelated to the purchase of the motor vehicle itself is problematic. The GAP coverage provides a form of insurance directly related to the motor vehicle and protects the purchaser in the "event of theft or damage to the Vehicle that results in a total loss," and the processing fee and prepaid interest are directly related to plaintiff's purchase of the vehicle. Plaintiff argues that the 2016 Q&A Interpretation for personal property should apply to the motor vehicle exception and that the Court should find that these three charges were not expressly intended to finance the purchase of the motor vehicle. That argument is unpersuasive. The 2016 Q&A Interpretation only applied to personal property and did not address motor vehicles. Even if one could expand it to motor vehicle purchases, none of the three charges at issue in this action provide additional financing that is unrelated to the purchase of the motor vehicle; rather, they are inextricably tied to plaintiff's purchase of the vehicle.

### III. CONCLUSION

For the reasons discussed above, the Court finds that the Contract is exempt from the requirements of the MLA, and, as a result, the parties' arguments over whether the contract violates the MLA are moot. Accordingly, defendant's Motion to Dismiss [Dkt. No. 66] will be granted by an Order to be issued with this Memorandum Opinion.

Entered this 19th day of May, 2021.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge